# Harris v. Theus, et al.

*Bill to Restrain Another From Engaging in Turpentine Business.*

(Decided Feb. 14th, 1907.   43 So. Rep. 131.)

1. *Contracts; Restraint of Trade; Legality.*—Although contracts in general restraint of trade are void as against public policy, a contract is valid and enforceable under which one sells another pine lease lands and agrees not to engage in the turpentine business within ten miles of a certain place so long as another is engaged in that business there.

2. *Same; Construction.*—A contract that A. will not engage in the turpentine business within ten miles of a certain place so long as B. operates a still at that place, prevents A.'s engaging in the business, although B.'s turpentine still is outside the corpo-rate limits of the town.

3. *Same; Sufficiency of Consideration.*—The purchase of the tur-pentine business and leases by B. was a sufficient considera-tion for the covenant that A. would not engage in that bus-iness within ten miles of the town so long as B. remained there in business.

4. *Injunction; Breach of Contract; Stipulation for Damages for Breach.*—That the contract stipulated for damages for its breach does not oust the jurisdiction of equity to enjoin a breach of the contract.

5. *Same; Trade Agreement.*—It is not necessary to wait until one engages in a business which will breach the contract, to in-voke the aid of equity, as equity will enjoin a preparation to begin the business.

6. *Same; Parties Defendant; Husband and Wife.*—Upon the allega-tion that defendant and his wife designed to evade an agree-ment made by defendant not to engage in a certain business,

by arranging to establish the business in the name of the wife, the wife is a proper party defendant to a proceedings to enjoin a breach of the agreement.

APPEAL from Geneva Chancery Court.

Heard before Hon. W. L. PARKS.

Action by R. L. Theus against W. H. Harris and another. From a decree for plaintiff, defendants appeal. Affirmed.

This was a bill filed by Theus against the Harrises for an injunction to restrain the said Harris from engaging in or carrying on the business of buying crude gum and distilling turpentine within 10 miles of the town of Geneva. The bill is based on a contract wherein Theus purchased of Harris certain leases of pine land for turpentine purposes and erected a distillery for the manufacture of turpentine, and a covenant in said contract that said Harris would not engage in the naval stores business within 10 miles of the town of Geneva, so long as Theus should be engaged in said business at Geneva. The allegations of the bill and of the answer, together with the pleadings in the cause, are sufficiently set out in the opinion of the court. The chancellor declined to dismiss the bill for want of equity, overruled the demurrer thereto, and on a final hearing decreed that complainant was entitled to the relief prayed for. From this decree, respondents appeal.

C. D. CARMICHAEL, and W. R. CHAPMAN, for appellant.—The court erred in overruling Harris's motion to dismiss the bill for want of equity. "At Geneva" can mean nothing but inside the corporate limits of Geneva and the bill avers that the still is operated near Geneva. The court erred in overruling the first three grounds of demurrers to the bill.—87 Ala. 206; 108 Ala. 451; 127 Ala. 110. The 4, 5, 6, 7, and 8th grounds should have been sustained. The 9th, 10th and 11th grounds of demurrer were improperly overruled.—McCurry v. Gibson, 108 Ala. 451. The 1st, 2nd, 3rd, 5th, 6th, 7th, 8th, 9th and 10th grounds of demurrer interposed by M. Harris should have been sustained.—104 Ala. 599.—There is a vast difference between the prin-

ciples invoked in the present case and those announced in *Moore-Handley Hdw. Co. v. Towers Hdw. Co.,* 87 Ala. 206.

W. O. MULKY, for appellee.—The motion to dismiss the bill was properly overruled. The authorities are against the contention that the contract under consideration is void as against public policy.—*Tuscaloosa I. Mfg. Co. v. Williams,* 28 South. 671; *McCurry v. Gibson,* 108 Ala. 455; *Robins v. Webb,* 68 Ala. 393; *Moore* in the opinion of the court. The chancellor declined to dismiss the bill for want of equity, overruled the demurrer thereto, and on a final hearing decreed that complainant was entitled to the relief prayed for. From this decree respondents appeal.
*v. Towers Co.,* 87 Ala. 206; *Moore v. Bonnett,* (Ill.) 15 L. R. A. 364; 46 L. R. A. 266, (N. J.); 41 L. R. A. (Mass.); 32 L. R. A. 829, (N. C.); 11 L. R. A. 437, (Minn.) and notes. The demurrers of W. H. Harris were properly overruled.—*McCurry v. Gibson, supra.* The demurrers of M. Harris were properly overruled.— *Hudspeth v. Tomason,* 45 Ala. 475; *Merchants Bank v. Lauchlin,* 102 Ala. 452; 15 A. & E. Ency. P. & P. 611; *Moore, et al. v. Towers, et al., supra.*

DENSON, J.—It may be conceded as being the general rule in all the states, as well as in England, that contracts in general restraint of trade are void as against public policy.—24 Am. & Eng. Ency. Law (2d Ed.) 842; 3 Am. & Eng. Ency. Law (1st Ed.) p. 882; 9 Cyc. 525; 2 Pom. Eq. Juris. § 934; *McCurry v. Gibson,* 108 Ala. 451, 18 South 806, 54 Am. St. Rep. 177; *Brewer v. Marshall,* 19 N. J. Eq. 537, 97 Am. Dec. 679; *Mitchell v. Reynolds,* 1 P. Wims. 181; *Trenton Potteries Co. v. Oliphant* (N. J. Eq.) 43 Atl. 723, 46 L. R. A. 255, 78 Am. St. Rep. 612. "In determining what is the public policy in this regard, we have to take into account certain contracts which restrain trade. It is of public interest that every one may freely acquire and sell and transfer property and property rights. A tradesman, for example, who has engaged in a manufacturing business, and has purchased land, installed a

plant, and acquired a trade connection and good will thereby, may sell his property and business, with its good will. It is of public interest that he should make such a sale at a fair price, and that his purchaser shall be able to obtain by his purchase that which he desired to buy. Obviously, the only practical mode of accomplishing that purpose is by the vendor's contracting for some restraint upon his acts, preventing him from engaging in the same business in competition with that which he has sold. His contract to abstain from engaging in such competitive business is a contract in restraint of trade, but one which has been recognized as not inimical to, but permitted by, public policy. Therefore, while the public interest may be that trade in general shall not be restrained, yet it also permits and favors a restraint of trade in certain cases. Contracts of this sort, which has been sustained and enforced by courts, have been generally declared to be such as restrain trade, not generally, but only partially, and no more extensively than is reasonably required to protect the purchaser in the use and enjoyment of the business purchased, and are not otherwise injurious to the public." This is the doctrine recognized in the courts of many of the states, including our own court.—9 Cyc. 529, and cases cited in note 70; 24 Am. & Eng. Ency. Law (2d Ed.) p. 850; *McCurry v. Gibson,* 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177; *Tuscaloosa Ice Co. v. Williams,* 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125; *Trenton Potteries Co. v. Oliphant, supra.*

Without indulging in comments on, or making a review of, the many cases in which contracts in partial restraint have been upheld and enforced, we will mention some of them, with a bare statement of the nature of the contract or covenant upheld: An agreement on the sale of a magazine not to publish a similar one (*Ainsworth v. Bentley,* 14 Wkly. Rep. 630); an agreement not to engage in the business of a gasfitter within 20 miles of a certain place (*Wood v. Whitehead,* 165 N. Y. 545, 59 N. E. 357); an agreement not to carry on the business of a soap manufacturer within 40 miles of Lockport, N. Y., for 10 years (*Ross v. Sadgbeer,* 21

[Harris v. Theus, et al.]

Wend. 166); an agreement not to do business as a banker in a certain place for 10 years (*Hoagland v. Segur,* 38 N. J. Law, 230); an agreement not to engage in the coal or fish business for a term of 10 years (*Hitchcock v. Anthony,* 83 Fed. 779, 28 C. C. A. 80); a contract by the owner of an exclusive ferry franchise between two points, on the sale of it to another, never to establish a rival ferry on his own land while the other shall maintain the one sold (*Westfall v. Mapes,* 3 Grant, Cas. (Pa.) 198; 9 Cyc. p. 531 (second agreement held valid); 24 Am. & Eng. Ency. (2d Ed.) p. 842 (restrait of trade) Coming to our own cases: In the case of *Moore & Handley Hardware Co. v. Towers Hardware Co.,* 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23, a contract was made between the parties, by which Moore & Handley Hardware Company sold to the Towers Hardware Company their entire stock of plow stocks and plow blades for a fixed amount, and covenanted not to handle any more plow stocks or plow blades, except railroad plows. It was held that, notwithstanding the covenant contained no express stipulation as to territory, the contract might be construed with respect to the territory over and in which the contracting parties were competitors at the time the covenant was made, which the allegations of the bill showed was all that part of Alabama lying north of the city of Birmingham; and, so construing the contract, it was there held that the covenant was a reasonable and valid one, citing numerous cases decided by the courts of other jurisdictions in support of the holding. The case of *McCurry v. Gibson,* 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177, involved a contract by which a physician who had built up a practice in the city of Anniston sold his business to another physician, and covenanted not to practice his profession in that city for two years. In an able opinion by Head, J., in which the doctrine of illegality of contracts in restraint of trade is discussed and gone over, the covenant was held valid, and relief by injunction was granted the covenantee.

The sum of these cases is that, though there can be no general restraint of trade, yet to a certain extent it may be regulated, and by consequence to some extent re-

strained, within a prescribed territory not unreasonable in extent. "To the rule that the restraint must be limited, and only so great as to afford adequate protection to the covenantee, it is a corollary that the covenant must be incidental to and in support of a contract or a sale by which the contractee acquires some interest in the business needing protection. A man cannot, for money alone, where he has no interest in the matter, procure a valid contract in restraint of trade, however limited may be the circle of its operation."—24 Am. & Eng. Ency. (e), p. 851, and cases cited in note 1 on page 852. It is on this principle, in part, that the contract in the case of *Tuscaloosa Ice Co. v. Williams,* 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125, was held invalid as against public policy. In that case the covenant was that the covenantor, a competitor of the covenantee in the same city in the manufacture and sale of ice, for a sum to be paid, was not to run his ice machine in the city of Tuscaloosa for five years. No business or property was sold or purchased. So that case is easily distinguishable from the one at bar, and is not authority for striking down the contract we are considering. It was there said, among other things: "When the contractor surrenders his trade or profession, an equivalent is given the public, because ordinarily, as a part of the transaction, the contractee assumes and carries on the trade or profession. Nothing is abandoned, and only a transfer is accomplished. The same occupation continues. The same number of mouths are fed. And these considerations obtain where one already engaged in a business in good faith, for the purpose of enlarging and increasing his business, purchases the stock in trade or practice or plant of a rival, and incident thereto takes the covenant of the seller not to engage in the same business within the territory covered by the consolidated enterprise, and in all such cases the covenant in restraint of trade is a reasonable one and valid."

It is made to appear by the averments of the bill that crude gum is an article that is purchased by those engaged in the naval stores business, and that one engaged in the business at or near Geneva may obtain, and

does purchase the gum from persons within a radius of 10 miles from the town of Geneva, and that leases of lands or the pine timber thereon located some distance from Geneva are made for the purpose of obtaining gum to be worked in the distillery, so that the place fixed by the covenant, within 10 miles of Geneva, considered in connection with the nature of the business and the purpose of the contract, seems to afford only a fair protection to the interests of the convenantee, without being so large as to interfere with the interests of the public.—*McCurry v. Gibson, supra; Robbins v. Webb,* 68 Ala. 393; 24 Am. & Eng. Ency. Law (2d Ed.) p. 844, and cases cited in note 3. In respect to the time stipulated, such contracts are not rendered invalid by a failure to specify any limit of time for its duration.— *McCurry v. Gibson,* 108 Ala., bottom of page 455, 18 South. 806, 54 Am. St. Rep. 177. The covenant in the case here is that the covenantor shall not engage in the business so long as Theus shall operate a turpentine still at Geneva, Ala., such stipulation as to time is expressly held sufficient in the following cases:—*O'Neal v. Hines,* 145 Ind. 32, 43 N. E. 946; *Eisel v. Hayes,* 141 Ind. 41, 40 N. E. 119; *Gill v. Ferris,* 82 Mo. 156; 24 Am. & Eng. Ency. pp. 847, 848; 9 Cyc. 529.

It appears, as has been observed, that the covenant is that the covenantor shall not enter into nor engage in the turpentine business at any point within 10 miles of the town of Geneva so long as the covenantee shall operate turpentine still at Geneva. The bill avers that, "soon after taking possession of the property purchased from Harris, complainant erected, at considerable expense, a turpentine distillery near Geneva; said town being the shipping point of complainant." The contention of Harris (the covenantor) is that this averment does not show that complainant is operating a still "at" Geneva, that operating the still "near" Geneva does not show the operation of it "at" Geneva, and, therefore, that no breach of the covenant is shown by the bill. The proof shows that the complainant's distillery is a miles from the courthouse that is located in the town of Geneva, and is a half mile from the corporate limits; but in construing the bill on motion to dismiss, and on

demurrer, we cannot look to the proof. So we must determine the meaning of the words "at" as used in the covenant and "near" as used in the bill. In 4 Cyc. p. 365, we find the word "at" defined as follows: "At. A word of somewhat indefinite meaning, whose significance is generally controlled by the context and attending circumstances, denoting the precise sense in which it is used. Used in reference to place, it often means 'in' or 'within'; but its primary sense is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'near' or 'about.'" In the case of *Rogers v. Galloway Female College* (Ark.) 44 S. W. 454, 39 L. R. A. 636, 639, Rogers had subscribed $2,500 for the purpose of inducing the location, building, and maintaining of a college for the education of females at the town of Searcy. The college was erected near to, but not within the corporate limits of Searcy. The payment of the subscription was resisted for this reason. The Supreme Court of Arkansas held that the defense was not well made, and, in respect to the definition of "at," said, in part: "The preposition 'at', when used to denote local position, may mean 'in' or 'near by,' according to the context, denoting usually a place conceived of as a mere point. Primarily, this word 'at' expresses the relations of presence, nearness in place." See, also, *Williams v. Ft. Worth & N. O. Ry. Co.*, 82 Tex. 553, 18 S. W. 206, 208. *O'Connor v. Nadel*, 117 Ala. 595, 598, 23 South. 532, was a foreclosure suit, and the property in the mortgage was described as the property known as the "town property" of said Attalla Iron & Steel Company, at Attalla, as indicated by a certain map of the lands. It was contended that the property was described as in the town of Attalla. This court through HARALSON, J., said: "It is plain to all intents that the property mortgaged was the property that once belonged to said company at Attalla, which does not necessarily mean in, but in or near, Attalla. The preposition 'at' denotes, primarily, 'nearness, or direction towards.'"—*Ray v. State*, 50 Ala. 172, 173. In respect to the word "near," we find that it is a relative term, its precise meaning depending on circumstances; but it has been time and again judicially held to be a synonym of "at." See the cases in note

[Harris v. Theus, et al.]

on page 447 of 21 Am. & Eng. Ency. Law. Upon the face of the contract and the averments of the bill we find nothing that requires it to be held that "at," as used in the contract, means within the corporate limits of Geneva, and the averment of the erection of the distillery near Geneva is sufficient .

It sufficiently appears that the covenant is based on a valuable consideration. The sale of the business is sufficient consideration for the covenant.—24 Am. & Eng. Ency. Law, 853; *McCurry v. Gibson, supra.*

It is next insisted that, as the covenant stipulates for a fixed sum as liquidated damages for breaches of the covenant, the covenantee has a complete remedy at law, which ousts the jurisdiction of the court of chancery. In the case of *McCurry v. Gibson, supra,* the covenant provided, in terms, for a forfeiture of $200 for a failure on the part of the covenator to comply with its terms. This court held that this was only a valid agreement for liquidated damages ,and said, in respect to the insistence there made, that the equitable jurisdiction was ousted; that, while there are some cases decided by courts of last resort which hold to that view, they are opposed to the weight of authority; and that such a provision for liquidated damages does not oust the jurisdiction of the chancery court and is no bar to a decree for specific performance—citing *Morris v. Lagerfelt,* 103 Ala. 609, 15 South. 895. In studying the covenant in the case at bar we have found nothing to withdraw it from the influence of the ruling made in that case.—3 Pom. Eq. Jur. § 1344. Jurisdiction of equity is generally exercised, in respect to these contracts, for the purpose of indirectly compelling their specific performance by means of an injunction preventing their violation.

It is not indispensable that the covenantee should wait until the covenantor should begin to operate a distillery before invoking the aid of the chancery court. The bill shows that W. H. Harris, in violation of the agreement, ordered shipped to Geneva a turpentine distillery, which, in order to evade the binding force of the covenant, he had billed to his wife, Maggie Harris, his co-respondent; that W. H. Harris has erected said distillery, procured gum for distilling, and is making all

preparations to engage in the turpentine business again "in" the town of Geneva; that he has purchased barrels, wood for fuel, and mules, and is buying gum and employing laborers. To all intents and purposes these allegations show a present purpose to immediately begin the operation of the business, and are quite sufficient to set in motion the jurisdiction of equity to prevent the violation of the contract by injunctive relief. In addition to the allegations of the bill above adverted to, in respect to the operation of the distillery by W. H. Harris, it is averred in the sixth paragraph of the bill that "said W. H. Harris, pretends in said matter to be acting as the agent of his wife, Maggie Harris, and pretends to be operating the said distillery in her name. But complainant avers that said Maggie Harris has no experience in the naval stores business, and has no capital invested in said business, or, if any, that it is property or money advanced to her by her husband, and that her name is being used in said business merely for the purpose of permitting the said W. H. Harris to avoid and evade the contract made with the complainant. Complainant further avers that the use of the name of Maggie or M. Harris in connection with the operation of said business was devised by the said W. H. Harris, and acquiesced in by Maggie Harris, purely for the purpose of trying to dodge said contract and defrauding complainant, and that in reality the said W. H. Harris is the only person who has any interest in said plant; or, if complainant is mistaken in this, he avers that the said Maggie Harris knew of the contract existing between the said W. H. Harris and complainant, and that she is permitting her name to be used in said business in order, as respondents properly think, to avoid said contract.

It is insisted by demurrer that the bill shows that the business sought to be enjoined belongs to W. H. Harris, and on this account that Mrs. Harris is not a proper party to the bill; further, that, if the business belonged to Mrs. Harris, then she is not a proper party. Equity abhors shams and subterfuges, and delights in looking through the mere surface and form of a transaction, and in scrutinizing closely the merits and substance. Assuming the truth of the foregoing allegations, a com-

bination between the respondents, a common design to defeat complainant's rights under the contract and to avoid the obligations of W. H. Harris which attached to him not to enter the turpentine business, is charged. In this view Mrs. Harris is a proper party to the bill. In order that the court may properly protect and enforce the rights of the complainant, the decree under the allegations will affect her interests.—15 Am. & Eng. Ency. Law, pp. 611, 612, 613 and 614; *Hudspeth v. Thomason,* 46 Ala. 470; *Moore & Handley Hardware Co. v. Towers Hardware Co.,* 87 Ala. 206, 211, 6 South. 41, 13 Am. St. Rep. 23.

It follows, from the foregoing considerations, that the motion to dismiss the bill for want of equity made by W. H. Harris and the separate demurrers filed by the respondents were properly overruled.

This brings us to the consideration of the cause on the merits. Separate answers are filed by the respondents, in which the contract alleged in the bill as having been made between the complainant and W. H. Harris is admitted, and it is also admitted that a turpentine distillery has been erected in Geneva since the making of said contract, and that it was about to be put in operation at the time the bill was filed; but it is expressly denied that W. H. Harris was concerned in the erection of said distillery, or in the preparation of it for operation, either individually or as an agent for his wife. It is also denied that Mrs. Harris's name is being used in connection with the operation of the distillery, or that she acquisced in the use of her name for the purpose of evading the covenant in the contract, and it is averred that the distillery is the property of Mrs. Harris, that it was purchased by her on her own responsibility and erected for her sole use, and that W. H. Harris is in no respect interested in or responsible for its erection or operation. The allegations in regard to the combination between the respondents for the use of the wife's name are also denied. So upon the admissions made in the answer, it seems that the only questions or issues to be determined on the merits are whether or not the distillery is an enterprise of W. H. Harris, whether it belongs to him and the purchase and operation of it in his wife's name is a

subterfuge, to enable him to violate the contract, or, if the property is not his, but is Mrs. Harris', did she erect it in good faith, to be operated for her benefit, or did she, knowing that the husband was prohibited by his covenant from operating the distillery, enter into a combination with him in the purchase and the erection of the still in her name to evade and "dodge" the contract? These issues are the substance of the allegations upon which the prayer for relief is based. The evidence has been carefully considered, and from the legal evidence in the case, if it be granted that the legal title to the distillery, as between the respondents, is in Mrs. Harris, yet we are of the opinion that the evidence supports the conclusion that the purchase, erection, and operation of the still was instigated by Mr. Harris, and the use of the wife's name was resorted to by and with the consent of Mrs. Harris, all for the purpose of trying to evade the obligations of the covenant entered into by the husband. This is the effect of the chancellor's decree, and is the substance of at least one of the alternatives upon which the prayer for relief is based.

But it is insisted that the proof fails to show a violation of the contract, in that it is not shown that the complainant's distillery is located about a mile from the county courthouse in Geneva, and about a half mile outside of the corporate limits of the town; that Geneva is his shipping point for all the products of his enterprise. Construing the word "at" in the light of the circumstances shown by the evidence, and on the considerations heretofore adverted to in respect to this question and the authorities cited, we are of the opinion that this insistence is not well taken. We concur with the chancellor that the complainant has made a case entitling him to the relief prayed for, and the decree must be affirmed.

Affirmed.

Tyson, C. J., and Haralson and Simpson, JJ., concur.