# Smith v. Webb.

*Bill to Enforce Specific Performance of Contract by Injunctive Process.*

(Decided May 30, 1912.  58 South. 913.)

1. *Contracts; Legality; Restraint of Trade.*—An agreement by a vendor of a business not to engage in a similar business in opposition to the vendee in a given place is not void as being in restraint of trade, and if otherwise valid, is not rendered void because not limited as to time of duration.

2. *Same; Construction; Extrinsic Circumstances.*—In construing contracts, the circumstances surrounding the parties, and the object sought, must be considered as bearing on the parties intent, and this must often necessarily be proved by parol.

3. *Same.*—In determining whether an agreement by the vendor of a business, not to engage in a similar business in opposition to the vendee, was intended to prevent the vendor from contribution by his services, presence and prestige to the conduct of such a business owned by another, a full disclosure of the surrounding circumstances existent when the contract was made is necessary.

4. *Same; Sale; Resumption of Business by Vendor.*—Where the circumstances surrounding the sale of a livery business showed that the parties to the sale believed that two livery stables at that place were unprofitable, and that when the vendor agreed not to engage in a similar business, it was intended thereby to avoid competition, the vendor broke the agreement by acting as manager for the proprietor of another stable, and by contributing his personal prestige, influence and acquaintance to the success of such other stable.

5. *Good Will; Sale or Other Transfer; Requisites.*—A contract for the sale of a livery outfit consisting of horses, buggies, etc., and providing that the stable occupied by the vendor, together with a contract between him and an oil company, and the insurance on the livery business, should be turned over to the vendee, and that the vendor would not engage in the business in opposition to the vendee, is a contract for the sale of the business, and not merely for the sale of the chattels and effects specified, although it does not mention expressly the sale of the business or good will.

6. *Injunction; Issue and Proof; Relief.*—The fact that the vendee failed to sustain the burden of proving the non-delivery of certain chattels covered by a sale, would not affect his right to have the vendor enjoined from engaging in a similar business contrary to the contract of sale, where the bill sought such injunction, and the recovery of damages for non-delivery of the chattel.

APPEAL from St. Clair Chancery Court.
Heard before Hon. W. W. WHITESIDE.

Bill by T. J. Smith against E. W. Webb to restrain respondent from engaging in business contrary to his contract, and for damages for non-delivery of chattels contracted to be delivered. Decree for respondent and complainant appeals. Reversed and rendered.

M. M. & VICTOR SMITH, for appellant. The contract is not void as against public policy.—*Robbins v. Webb,* 68 Ala. 398; *Hardware Co. v. Towers,* 87 Ala. 206; *Mc-Curry v. Gibson,* 108 Ala. 451; *Tuscaloosa I. & M. Co. v. Williams,* 127 Ala. 110. It was the duty of the court in construing the contract to look at the condition of the parties, and the circumstance surrounding them at the time the contract was made.—*McDonald v. Jordan,* 142 Ala. 379; *Lowman v. Ogden,* 143 Ala. 351. The sale was of the business and good will, and not merely of the chattel.—90 Ala. 631; 38 N. J. E. 542; 15 Cyc. 1047; 1 Words & Phrases, 915; 3 Words & Phrases "engage." It is respectfully submitted that under these authorities the trial court was in error in its findings, and that the cause should be reversed and rendered.

N. B. SPEARS, and J. A. EMBRY, for appellee. No brief reached the Reporter.

McCLELLAN, J.—The purpose of the bill, exhibited by appellant against appellee, is to enforce the specific performance of the contract set out below, by means of the restraining effect of injunctive process. The contract made was in writing and is as follows: "Pell City, Alabama, October 19, 1910. This is to certify for a consideration of $1,500.00 I have sold and delivered to T. J. Smith my livery outfit that consists of 8 horses, all buggies, surreys, hacks, wagons, harness of every description, in fact all that belongs to the stable, includ-

ing one billy goat, wheelbarrow and tools of every kind and description except three shoats in the barn lot. I also agree to turn over to T. J. Smith both stables now in my possession belonging to Sumter Cogswell. I further agree to turn over my contract with the Standard Oil Company on November 1, 1910, and I further agree to have transferred to the said T. J. Smith my insurance on said livery business. *I further agree for the above consideration not to engage in the livery business in opposition to said T. J. Smith in Pell City.* (Signed) E. W. Webb." (Italics supplied.)

It is contended that the vendor (Webb) had breached before the bill was filed, and was then breaching, the contract in that feature (italicized above), whereby he obligated himself to refrain from engaging in the livery business, etc.

The contract is not void as in restraint of trade.—2 Beach on Contr. § 1575; *Tuscaloosa Ice Mfg. Co. v. Williams,* 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125; *McCurry v. Gibson,* 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177; *Moore v. Towers Hdw. Co.,* 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23; *Robbins v. Webb,* 68 Ala. 393; *Arnold & Co. v. Jones Cotton Co.,* 152 Ala. 501, 44 South. 662, 12 L. R. A. (N. S.) 150; *Harris v. Theus,* 149 Ala. 133, 43 South. 131, 10 L. R. A. (N. S.) 204, 123 Am. St. Rep. 17. The omission from such contracts of a limit as to time of duration does not affect them if they are otherwise valid.—*Harris v. Theus, supra; McCurry v. Gibson, supra;* 92 Am. Dec. pp. 754, 755, note.

As appears from the instrument itself, the vendor was, when the sale was made, engaged in the livery business at Pell City. While there is in the instrument no express provision for the sale of the livery business *as such,* the stipulations therein with respect to the con-

tract with the Oil Company evidently to endure beyond November 1, 1910, with respect to the transfer of the "insurance on said livery business," and with respect to the turning over of the Cogswell stables, in connection with the engagement italicized, leave no room for doubt, we think, that the parties contemplated, and so contracted, the sale of the business along with the chattels and effects specified in the paper. In other words, these evidences from the face of the instrument exclude the idea that the parties contemplated, *solely,* the sale of the chattels and effects enumerated. There is in the instrument no express reference to the sale of the good will of the business. It may well be, though it is not necessary to affirm it at this time, that such an engagement as that expressed in the italicized provision would import, necessarily, the sale of the *good will* of the business as effectually as if that term had been incorporated in the writing. Again, since the good will of a business is an incident thereto, it may be the sale of the business *as such* would carry by implication that property element or attribute of the business. Much has been written by the courts and textwriters on the subject.—20 Cyc. pp. 1275-1283. Practically all of the many decisions consulted on this investigation treat of contracts where the parties referred to *good will* in terms. Probably, in such dealings, it is best to remove all doubts in the premises—to make particular reference to *good will.*

In the construction of contracts the judicial duty is to ascertain the intent of the parties, where, of course, that intent is not so clearly expressed as to exclude the necessity for construction. In order, where construction is necessary, to ascertain the intent of the parties, the circumstances surrounding them and the object proposed by their engagement should be considered. Parol

evidence is often the only means whereby the conditions and circumstances surrounding the parties, at the time of contracting, may be shown.—*Lewman v. Ogden,* 143 Ala. 351, 42 South. 102, 5 Ann. Cas. 265; *McDonnell v. Jordan,* 142 Ala. 279,38 South. 122.

The particular feature of the contract to be construed is this: "I further agree for the above consideration not to engage in the livery business in opposition to said T. J. Smith in Pell City." Whether the breach charged by the vendee may be sustained depends, primarily, upon the character and measure of restraint this provision imposed upon the vendor; and, secondarily, upon the resolution of the issue of fact as to the vendor's conduct in respect of the livery business, in Pell City, with which he was later connected.

Whether the intent of the parties was that the vendee should not engage in the livery business in his own name at that place, or whether he should not contribute by his services, presence, and prestige to the conduct of such a business owned by another, are questions arising from the terms employed in the provision, and make the true meaning equivocal, and hence present a case calling for the full discovery of the surrounding circumstances existing when the contract was made.—*Corwin v. Hawkins,* 42 App. Div. 571, 59 N. Y. Supp. 603.

It may be assumed that, since the law does not look with favor upon restrictions against competition, tending to monopoly, though upholding such contracts when not in general in restraint of trade, contracts restrictive of the right to engage in business of a particular kind and in a particular place will be strictly construed. —*Eastern Express Co. v. Meserve,* 60 N. H. 198.

When the contract was made, the vendor had been engaged for three years or more in the livery business at Pell City. While there is some conflict in the evidence

upon the point, it is fair to say that its clear preponderance is to the effect that, at the time of the sale, the trade of that character at Pell City was not sufficient for the *profitable* conduct of two distinct livery businesses. At that time the vendor had no rival. It may be he had controlled this condition by renting another livery barn, which it does not appear was the site of the business the vendor then conducted. The vendee decided to open a livery business at Pell City. Through the medium of mutual friends of the vendee and vendor, they came together upon the idea that the business there would not support two livery stables; and the vendor embraced the suggestion that he sell out to his threatened rival. The provisions of the contract demonstrate that the common intent was to avoid competition in the business at a place where it was thought the result would prove unprofitable to both. In the light of these circumstances, the force and common intent of the restrictive provision of the instrument is shown with all certainty.

Approximately three months after the sale to this vendee, one J. C. Alverson, who was then engaged in the livery business at a point about five miles from Pell City, decided to establish a livery business at Pell City; his notion being to more conveniently serve his customers in that way than by sending conveyances from his original stand some miles away.

It appears, from the whole evidence, without any real doubt, that Webb was the general manager of Alverson's Pell City stable; that he had no interest in the business; that his contract was for wages at $46 per month; that he had general control of the business, apart from the fixing of a schedule of prices by the owner; that he took an active part, as the representative of Alverson, in the setting up of the business, the rent-

ing of the place therefor, the purchase of supplies for its opening and continuance, the collection of its dues, the payment of its hands out of the funds of the business, and the diligent promotion of the business, including the active solicitation of patronage therefor. And it is shown by Alverson, himself, that there has been no settlement between the manager and the owner, notwithstanding the manager left his service on February 1, 1911; and that, at most, he visited the Pell City stable from one to four times a week. The evidence, as a whole, strongly supports the conclusion that Webb put to the promotion of the business of the Alverson stable his personal prestige, influence, and acquaintance, as a liveryman, in accordance with Alverson's expressed expectation when he hired Webb to run his stable at Pell City. Nor is it possible, on the whole evidence, to doubt that Webb, as the representative of Alverson, pressed for patronage of the traveling public without regard to whether the solicitation was of an old customer of the businss he had sold to Smith or not; and, at least, without care to avoid making the impression that patronage of the new business was at least a favor, if not of profit, to him. On the whole, the evidence does not inspire the conclusion that Webb entertained any other idea than that he, *as the agent of Alverson,* might by diligence create and promote the competition with Smith, which he could not do in a rival business of his own. Could he do this without a breach of the contract?

So far as adjudications made in other jurisdictions are concerned, it may be admitted that either response to the question could be rested upon, might find suggestion in, and some measure of support from, decisions based upon *somewhat* similar conditions of contract and circumstances attending it. A large number of these

decisions have been considered. In support of an affirmative reply to the question, these might be cited: *Eastern Express Co. v. Meserve*, 60 N. H. 198; *Grimm v. Warner*, 45 Iowa, 106; *Battershell v. Bauer*, 91 Ill. App. 181; *Allen v. Taylor*, 39 Law. Jour. (Ch. Rep.) 627; *Clark v. Watkins*, 9 Jurist (N. S.) 142.

Under this contract, interpreted in the light of the circumstances in evidence, our conclusion is to the contrary.

The common intent of the parties, in the clause in question, was to afford and assure the vendee, as far as the vendor was concerned, an unopposed pursuit of the business sold to the vendee. For that he paid a valuable consideration. In setting down this intent in the instrument, there is no expression of limitation that the business against the engaging in which the vendor bound himself should be a livery business *owned* by the vendor. The circumstances surrounding the parties, in connection with the letter of the contract, compel the conclusion that the parties intended that the vendor should so far refrain from such a controlling relation and activity with an *opposition* business of that character as would naturally result in bringing about the very condition against which they expressly stipulated.— *Nelson v. Johnson,* 38 Minn. 255, 36 N. W. 868.

There is a patent distinction, in such cases, between a mere servantship in a business and the managership thereof. One is subordinate—inconsequential in effecting the general popularity and success of the enterprise —while the other is dominant, controlling, influential, in its appeal to public favor, and hence in its inevitable effect upon the success of the business.

In *Jefferson v. Markert,* 112 Ga. 498, 37 S. E. 758, a similar question was presented, though there the sale included *good will* by express stipulation. The vendor

subsequently opened and operated a rival business belonging to his wife. The court ruled that the fact that he was without interest in the business and was only an employee of the owner did not avoid the breach of his contract to refrain from engaging in this competitive business. It was said, in part: "The contract is not confined to preventing him from entering upon such business in his own name, as owner and proprietor thereof. It can be violated as much by an employee and agent, especially one who has the conduct and conrol of the business, as it would be were he the proprietor of the business in which he engaged."

In *Meyer v. Labau,* 51 La. Ann. 1727, 1732, 26 South. 463, the question was likewise resolved, viz., that interest in the competitive business was not a sine qua non to a violation of a valid contract not to engage in a competitive business.

Our conclusion does not accord with that prevailing below, viz., that there was no breach, in the particular indicated, of the contract by Webb.

That incident (to the main object) feature of the bill, touching the alleged failure of the vendor to deliver certain chattels, is not sustained in the proof. The failure of the complainant to carry the burden in this incidental particular does not, of course, affect his right to relief consistent with the major purpose of the bill.

From the evidence it appears that Webb was engaged in the livery business, in violation of his contract with complainant, for 30 days; and that during that period complainant was damaged in the sum of $100.

The decree of the chancellor is reversed, a decree will be entered here granting the relief to which complainant is entitled as indicated. The evidence on the matter of damages suffered in *consequence of breach by Webb* does not afford sufficient data from which any amount

of damages may be awarded.—*Taylor v. Howard,* 110 Ala. 468, 18 South. 311. Webb, the respondent, is permanently enjoined from engaging in the livery business, at Pell City, in opposition to complainant, so long as complainant continues in the business purchased by him from Webb.

Reversed and rendered. All the Justices concur.