# American Laundry Co. *v.* E. & W. D. C. Co.

### Bill to Specifically Enforce Contract.

(Decided February 1, 1917.  74 South. 58.)

1. **Injunction; Restraining Breach; Contract in Restraint of Trade.**—A bill for injunction to restrain violation of a contract of a laundry to collect dry-cleaning work for the complainant and for no one else for ten years in a certain county, by which contract the plaintiff agreed not to engage in the laundry business in the same county for a like period, did not show an enforceable contract, and an amendment alleging that it was necessary to the business that such contract be performed, and that there were other laundries and dry-cleaning establishments in the county, was insufficient to authorize equitable relief.

2. **Contracts; Legality of Object; Restraint of Competition.**—Contracts in restraint of trade are in themselves, if not shown to be reasonable, bad in the eye of the law.

3. **Contracts; Legality of Object; Restraint of Competition; General Restrictions.**—Whatever restraint in a contract is larger than the necessary protection of the parties is void, as being injurious to the interest of the public, on the ground of public policy.

4. **Contracts; Legality of Object; Restraint of Competition; General Restrictions.**—General restraints of commerce are all void, whether by bond, covenant, or promise, with or without consideration, and whether it be of the party's own trade or not.

[American Laundry Co. v. E. & W. D. C. Co.]

5. **Contracts; Legality of Object; Unlimited Restrictions.**—A contract not to carry on any business whatever is unreasonable, and not enforceable, however limited the time or space may be, and likewise a contract which makes one party the sole judge whether one business competes with another.

6. **Contracts; Legality of Object; Limitation as to Time and Space.**—Contracts in restraint of trade, unlimited as to time and space, are void as against public policy.

7. **Contracts; Legality of Object; Limitation as to Time and Space.**—A contract in total restraint of trade, limited as to space, but unlimited as to time, is not illegal, and may continue for the life of the party restrained, but one limited as to time and unlimited as to territory is void.

8. **Contracts; Legality of Object; Restraint of Trade; Nature of Business.**—If a contract in restraint of trade is in respect to a duty which the party owes the public, although it is limited as to time and space, it will not be enforced in equity, but is void.

9. **Contracts; Legality of Object; Restraint of Trade; Nature of Business.**—An agreement for a limited space upon proper consideration is usually held valid, and the sale of a business by one person to another and the good will of the business is usually held a sufficient consideration.

10. **Contracts; Legality of Object; Restraint of Trade; Nature of Business.**—The restriction of trade is allowed to such an extent as is reasonable to protect the interests involved, but the test of the reasonableness and the necessity of the interest to be protected depend upon the peculiar circumstances of each case, but all combinations to enhance or depreciate prices are contrary to public policy and void.

11. **Contracts; Legality of Object; Restraint of Trade; Nature of Business.**—He who has commodities to sell in the market has the same right to competition among buyers as the buyers have to competition among sellers.

12. **Specific Performance; Legality of Object; Restraint of Trade; Nature of Business.**—A contract between a dry-cleaning company and several laundry companies, by which each agreed not to engage in the business of the other in the county for ten years, and by which the laundries agreed for a commission to collect and deliver the work for the dry-cleaning company, if not wholly void, was such as might injure the public, and therefore ought not to be specifically enforced, but the parties should be remitted to their actions at law for damages.

13. **Specific Performance; Right to Remedy.**—Specific performance is a matter of grace, and not of absolute right.

14. **Specific Performance; Right to Remedy; Discretion of Court.**—The discretion of the court to award specific performance is not an arbitrary assumption of authority, but a sound discretion regulated as near as may be by general rules.

15. **Specific Performance; Contracts Enforceable; Affirmative Action.**—Courts will never order specific performance of contracts requiring continuous affirmative action to perform, because the court cannot superintend such work or performances; but in certain cases it will award specific performance by forbidding the doing of certain acts to enforce negative stipulations or covenants.

16. **Injunction; Contracts Enforceable; Affirmative Action.**—Breach of contract for services, if the services to be rendered do not require or contemplate peculiar or unusual personal art, will not be enjoined.

[American Laundry Co. v. E. & W. D. C. Co.]

**17. Injunction; Contracts Enforceable; Negative Covenants.**—Restraining breach of a negative covenant is limited to cases in which the negative covenant is negative in fact as well as in form.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the E. & W. Dry-Cleaning Company, a corporation, against the American Laundry Company, to enjoin the violation of contracts. From a decree overruling demurrers to the amended bill, respondent appeals. Reversed, rendered, and remanded.

The substance of the original bill sufficiently appears. The amendment is as follows:

Complainant further avers that it was organized for the purpose of engaging in the dry-cleaning business in the city of Birmingham, and was incorporated March, 1912; that prior to said incorporation the terms of said contract had been practically agreed upon between said laundry company, including respondent and complainant's incorporators, and that the moving consideration causing complainant's incorporation and the establishment of its dry-cleaning plant was the execution of said contract by said laundry company; that said laundry company at said time did not do any dry-cleaning work, and did not have any equipment or plant for such work, but they did have wagons and agents covering the city of Birmingham and Jefferson county collecting laundry, and said wagons and agents afforded a reasonable means for complainant through such companies to get dry-cleaning work, and to collect dry-cleaning work without the expense of maintaining wagons and agents; and that in fact complainant could not, out of its business, have maintained such wagons and agents. Complainant further avers that its incorporators realized such fact, and realized that a large business could likely be built up by diligent application with the aid of said laundry company upon the faith of said contract, and it was so incorporated; thereafter complainant, upon the faith of said contract, and relying thereupon, invested the sum of $10,000 in dry-cleaning machinery and equipment, and erected a modern up-to-date dry-cleaning plant in the city of Birmingham, all of which could not have been done without the aid of said laundry company as agreed upon in said contract; that among its said incorporators and stockholders were the owners of all the said laundry companies executing said contract, including respondent, and that said laundry companies, or their owners, are part of

[American Laundry Co. v. E. & W. D. C. Co.]

complainant's stockholders today. Complainant further avers that to have established the laundry during the life of said contract would have seriously interfered with its dry-cleaning establishment, as it was designed that its dry-cleaning business should be of large volume as it had been, and that all of complainant's time and attention should be required by said dry-cleaning business, as it had been. Complainant further avers that all of said laundry companies have continuously advertised that complainant did their dry-cleaning work for them, and have printed signs to that effect upon their windows at their places of business. Complainant further avers that at the time of the execution of said contract there were other laundries operating in Birmingham and Jefferson county, and that there were and had been numerous other establishments carrying on a dry-cleaning business, with which concerns your complaint has had no connection whatever.

MORRIS, LOVEMAN for appellant. STOKELY, SCRIVNER & DOMINICK for appellee.

MAYFIELD, J.—The equity of appellee's bill is to specifically enforce a contract set out in the bill by injunction, or, more definitely speaking, to enjoin breaches of this contract. The prayer of the bill is that: "Upon the final hearing of this cause your honor will make and enter a decree permanently enjoining respondent from the violation of said contract during the life of the same, and permanently restraining respondent from delivering over to dry-cleaning and dyeing establishments other than complainant the cleaning and dyeing work obtained by it, which under said contract, respondent is bound to turn over to complainant."

The substance of the contract was that appellee was to establish in Birmingham, Ala., a dry-cleaning business and plant, and that five laundry companies in the city should not for a period of ten years engage in the dry-cleaning business, and that appellee for the same period should not engage in the laundry business in Jefferson county, Ala.; that the five laundry companies should deliver to the dry-cleaning company all dry-cleaning work which they received from their customers, and that the work should be done by appellee and returned to the offices of the laundry company from which it was received, to be by the latter returned to the customers; that the laundry company

should receive 25 per cent. of the price paid by the customer for the dry cleaning, which price should be fixed exclusively by the dry-cleaning company; that the garments or work so dry-cleaned and delivered to the customers should bear the mark and brand of the laundry company, and not that of the dry-cleaning company, which did the work and fixed the price, the laundry company to collect such price from the customer and be diretcly responsible to the dry-cleaning company for 75 per cent. of the schedule price so fixed by the dry-cleaning company.

It is alleged that the laundry companies, including appellant, each advertised the fact that appellee did its dry-cleaning business, but that appellant has recently breached, and continues to breach, its contract, by refusing and failing to deliver the work so collected by it from its customers to complainant, but has delivered and continues to deliver the work so collected by it to other dry-cleaning companies, and allows such other dry-cleaning companies to advertise to the public that appellant is collecting work for them.

The bill was demurred to on the ground that the contract set out therein, and which is sought to be specifically enforced by injunction, was void because in restraint of trade and because it tended to create a monopoly in the dry-cleaning and laundry business in Jefferson county, Ala. The demurrer was sustained to the original bill, but the bill was subsequently amended. The reporter will set out the amendment. The demurrer was re-interposed to the bill as amended, and was overruled; and from the decree overruling the demurrer, appellant appeals.

(1) We do not see that the amendment cured the defect in the original bill, nor that it shows that the contract set out was valid or that it should be enforced by the injunctive relief sought. The contract in question, we think, falls clearly within the class of that construed in the case of *Tuscaloosa Co. v. Williams*, 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125, and *Arnold & Co. v. Jones Cotton Co.*, 152 Ala. 501, 44 South. 662, 12 L. R. A. (N. S.) 150, and cases there cited, and not within the class of the contracts upheld and enforced in the cases of *Smith v. Webb*, 176 Ala. 596, 58 South. 913, 50 L. R. A. (N. S.) 1191; *McCurry v. Gibson*, 108 Ala. 451, 18 South. 806, 54 Am. St. Rep. 177, *Moore v. Towers Co.*, 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23, *Robbins v. Webb*, 68 Ala. 393, *Harris v. Theus*, 149 Ala. 133, 43 South. 131, 10 L. R. A. (N. S.) 204, 123 Am.

[American Laundry Co. v. E. & W. D. C. Co.]

St. Rep. 17, and *Pearson v. Duncan & Son*, 198 Ala. 25, 73 South. 406.

Doubtless there is some, if not much, conflict in the authorities, text-books, and decisions of America and England as to the extent to which courts of equity may or should go to restrain by injunction breaches of contracts in partial restraint of trade. Mr. High, in his work upon this subject has gone through three distinct stages of transition, and states the three doctrines announced in the development of the law.—Volume 2, § 1167.

The doctrine prevailing in this state may be found in the Alabama cases above referred to, in the authorities therein cited, and in the notes thereto when reported in American State Reports and Lawyers' Reports Annotated. Some of the propositions as settled by this and other courts may be summarized as follows:

(2) Contracts in restraint of trade are in themselves, if not shown to be reasonable, bad in the eye of the law.

(3-5) Whatever restraint is larger than the necessary protection of the party with whom the contract is made is unnecessary and void, as being injurious to the interest of the public, on the ground of public policy. General restraints are all void, whether by bond, covenant, or promise, with or without consideration, and whether it be of the party's own trade or not. A contract not to carry on any business whatever is unreasonable, and not enforceable, however limited the time or space may be; and likewise a contract which makes one party the sole judge as to whether or not one business competes with another.

(6, 7) There is a well-recognized tendency in the English and American cases of recent date to modify the ancient strictness touching contracts in restraint of trade. Those unlimited as to time and space, and in total restraint of trade, are void as against public policy. One limited as to space, but unlimited as to time, is not illegal, and may continue for the life of the party restrained; but one limited as to time, but unlimited as to territory, is void.—*Bowser v. Bliss*, 7 Blackf. (Ind.) 344, 43 Am. Dec. 93; *Wiley v. Baumgardner*, 97 Ind. 66, 49 Am. Rep. 427.

(8) If, however, the contract for restraint is in respect to a duty which the party owes the public, although it is limited as to time and space, equity will not enforce it, and it will be held void.—*Tuscaloosa Ice Mfg. Co. v. Williams*, 127 Ala. 110, 28 South. 669, 50 L. R. A. 175, 85 Am. St. Rep. 125; *New Orleans*

*Gas. Co. v. Louisiana Light Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Commercial Union Tel. Co. v. New England Tel. & Tel. Co.*, 61 Vt. 241, 17 Atl. 1071, 5 L. R. A. 161, 15 Am. St. Rep. 893.

The true test was said by the great TINDAL, C. J., to be: "Is the restraint such only as to effect a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public."—7 Bing. 735.

(9) No definite or certain rule can be given to determine when contracts are in restraint of trade or against public policy and therefore void. As a rule, a general agreement without limit as to time and space by which one person agrees with another that he will not engage in a certain business is void, but an agreement for a limited space upon proper consideration is usually held valid, and the sale of a business by one person to another and the good will of the business is usually held a sufficient consideration.—*Arnold & Co. v. Jones Cotton Co.*, 152 Ala. 501, 44 South. 662, 12 L. R. A. (N. S.) 150.

(10) The restriction is allowed to such an extent as is reasonable to protect the interests involved, but the test of the reasonableness and the necessity of the interest to be protected depend upon the peculiar circumstances of each case, but all combinations to enhance or depreciate prices are contrary to public policy and void.—*Arnold & Co. v. Jones Cotton Co., supra.*

(11) He who has commodities to sell in the market has the same right to competition among buyers as the buyers have to competition among sellers. A secret combination among grain dealers in the nature of a partnership was held void as tending to stifle all competition.—*Arnold & Co. v. Jones Cotton Co., supra.*

The doctrine as to contracts in partial restraint of trade was thus summed up by ANDERSON, J. (now Chief Justice), in the opinion in *Flowers, et al. v. Smith Lumber Company*, 157 Ala. 510, 511, 47 South. 1022, 1023: "There are a few instances when contracts have been upheld by the courts, notwithstanding they had a tendency to restrain trade, such as sales of a stock or business and the good will of the vendor, with an obligation not to engage in a similar business or calling in the same locality. Contracts of this kind have been upheld and enforced upon the theory that they did not generally, but only partially, restrain trade, and only to the extent of protecting the purchaser in the employment and use of the business purchased, and which was

[American Laundry Co. v. E. & W. D. C. Co.]

not otherwise injurious to the public. Contracts, however, whose chief, if not sole, aim is to stifle competition and create a monopoly, will not be enforced, because they are contrary to public policy. And in considering such contracts 'courts will not stop to inquire as to the degree of injury inflicted upon the public. It is enough to know that the inevitable tendency of such contracts is injurious to the public.'—*Arnold v. Jones Cotton Co.,* 152 Ala. 501, 44 South. 662, 12 L. R. A. (N. S.) 150."

(12) The contract in question may be classed with those condemned in the last two cases cited. If, however, it can be said in this case that the contract in question was not wholly void, and might support an action as for some breaches thereof, yet we are clear to the conclusion that it does or may affect the public in such manner as to work injury to the public, and for that reason ought not to be specifically enforced, when the very enforcement of it may injure the public, but that the parties should be remitted to their actions at law to recover the damages suffered, where recoverable damages were sustained.

(13) Specific performance is a matter of grace, and not of absolute right. As early as 1746 Lord Hardwicks said: "The constant doctrine of this court is that it is in their discretion whether they will decree a specific performance, or leave the plaintiff to his remedy at law."—3 Atk. 388.

This doctrine has been steadily maintained, down to the present time.—*Seymour v. Delancey,* 6 Johns. Ch. (N. Y.) 222; *Ellis v. Burden,* 1 Ala. 458; 2 Story's Equity, 736-42. "The question is, not what the court must do, but what the court may do, under the circumstances."

(14) This discretion is not an arbitrary assumption of authority, but a sound discretion, regulated, as near as may be, by general rules.—*Pulliam v. Owen & Russell,* 25 Ala. 492; *Sims v. McEwen's Adm'r,* 27 Ala. 184; *Casey v. Holmes,* 10 Ala. 777; 7 Mayf. Dig. 836.

(15) Courts will never order specific performance of contracts requiring continuous affirmative action to perform, because the court cannot superintend such work or performance; but in certain cases it will award specific performance by forbidding the doing of certain acts to enforce negative stipulations or covenants.

There are both English and American cases in which contracts to render personal services requiring peculiar and particu-

lar skill, such as that employed by public singers, dancers, etc., have been specifically enforced, where the contract contained negative covenants not to perform such services for any other person; such specific performance being compelled by enjoining the party from rendering such services for other persons—not by compelling the performance for the party for whom the services were agreed to be performed. The original and leading case is *Lumley v. Wagner*, 21 L. J. Ch. 898 (English case), s. c., 6 Eng. Rul. Cas. 652, and notes thereto which collect the authorities.

(16, 17) These cases show that the reason for the injunction is to be found in the facts that the services are of purely personal skill and art, for which an adequate substitute cannot be had; that the damages to be awarded in a court of law would be difficult of ascertainment, and the remedy at law wholly inadequate. If the services to be rendered do not require or contemplate peculiar and unusual personal art or skill, specific performance will not be awarded in such case. The rule is also limited to cases in which the negative covenant is negative in fact as well as in form. If the covenant to be so enforced is in substance and in fact affirmative in effect, although negative in form, it will not be so enforced.

The leading case in this state on the subject is that of *Iron Age Publishing Co. v. Western Union Telegraph Co.*, 83 Ala. 498, 3 South. 449, 3 Am. St. Rep. 758. The bill in that case sought to enjoin the telegraph company from delivering Associated Press dispatches to other newspapers in the complaint named, because of the covenant in a contract not to so deliver. A demurrer to the bill was sustained by the trial court, and the ruling of the trial court was by this court affirmed; and in the opinion many, if not all, of the American and English authorities were reviewed on the subject. Justice SOMERVILLE, in reviewing the cases, thus concludes  and what is said there is, we think, apt and conclusive here: "How, it may be asked, is it practicable for the court to compel the complainant to perform personal services, as agent and correspondent of the Associated Press at Birmingham, which it has contracted to perform from year to year, under this agreement? We have seen that the duty involves the exercise of special skill, judgment, and discretion, being intellectual as well as mechanical in its character. These duties are also continuous in their nature, and of indefinite duration. There can be, as we

[American Laundry Co. v. E. & W. D. C. Co.]

have shown, no specific performance affirmatively of such duties by a court of equity. The most that can be done is to negatively enforce them by injunction prohibiting their breach, and this only on bill filed praying such particular relief."—83 Ala. at page 510, 3 South. at page 454 (3 Am. St. Rep. 758).

"This might involve the frequent necessity on the part of the court of hearing complaints from the defendant charging the complainant with a breach of its duties, or from the complainant arraigning the defendant for contempt for a violation of the injunction. There would thus be no end to the number of occasions when the court might be called on from year to year to say whether the complainant has performed the duties in question faithfully and efficiently, so as to have kept the injunction in force, or negligently and unskillfully, so as to justify its breach. For these reasons, the rule is that 'equity will not enforce the performance of continuous duties involving personal labor and care of a particular kind which the court cannot superintend.' "— 83 Ala. at page 511, 3 South. at page 455 (3 Am. St. Rep. 757).

How is it possible for a court to specifically enforce the contract in question? How may it compel dozens of drivers of laundry wagons to solicit and gather up the soiled clothes and linens of thousands and thousands of people, and to carry all of those to be cleaned by the dry process, to appellee, and compel appellee to clean them and deliver them back to appellant, and then compel appellant to collect from the customers the prices fixed by appellee, and to remit 75 per cent. thereof to appellee? The answer of appellee is, by enjoining appellant from delivering the goods to other companies to be dry-cleaned. This might have the effect of preventing, rather than enforcing, performance. Moreover, we are not sure that the performance of this contract will not tend to injure the public. The substance and effect, if not the object, of this contract, was to prevent competition in the business of cleaning, both wet and dry, so far as the parties thereto could do so. It may be true, as alleged in the bill, that there are other companies engaged in Birmingham in the laundry business and the dry-cleaning business, and that there is competition, and no restraint of trade, in this field. If so, it is not by virtue of this contract sought to be enforced, but in spite of it. It has done what it could do to prevent competition in the dry-cleaning business; it agrees that, so far as the parties are concerned, the dry-cleaning business shall be done

[Southern States Fire Ins. Co. v. Kronenberg.]

exclusively· by one of the six parties, and not by the other five, nor by any one of the public, and this one party who is to do the dry-cleaning business for all the parties to the contract, as well as the public, is, by the very terms of the contract, given the sole and exclusive right to fix the prices for cleaning. It is difficult to see why the public is not better served by the breach than by the performance of this contract.

It follows that the demurrer to the amended bill should have been sustained.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.