<hr/>

(42 App. Div. 571.)

### CORWIN v. HAWKINS.

(Supreme Court, Appellate Division, Fourth Department.   July 18, 1899.)

CONTRACTS—SALE OF GOOD WILL OF BUSINESS—STIPULATION AGAINST COMPETITION.

> A contract by which one partner, on selling his interest in a plumbing and gas-fitting business to his co-partner, agreed not to engage in that business in the same village for the term of five years, is violated by his engaging in the business of soliciting plumbing for another plumber, though he had no pecuniary interest in the business.

Appeal from trial term, Ontario county.

Action by Irving Corwin against Abraham Hawkins. Appeal by defendant from an order denying a motion for a new trial, and from a judgment for plaintiff.   Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Frederick L. Manning, for appellant.

Frank Rice, for respondent.

NASH, J.   The parties for several years prior to the 11th of May, 1895, were engaged as co-partners in the plumbing, hardware, and tinning business; and on that day the defendant sold his interest in the business to the plaintiff, and entered into written articles of dissolution, in which the following covenant was included:

> "And the said Abraham Hawkins, for the consideration aforesaid, doth hereby covenant and agree to and with the said Irving Corwin that he will not engage in the hardware, tinning, plumbing, and gas-fitting business or trade, or either of them, for the period of five years from this date, in the village of Geneva, Ontario county, New York, and in case that the said Abraham Hawkins should at any time engage in the hardware, tinning, plumbing, and gas-fitting business or trade, or either of them, or any branch thereof, in said village of Geneva, he shall and will forfeit and pay to the said Irving Corwin the sum of one thousand dollars, as liquidated damages (not as penalty) for the violation of said agreement."

The action is to recover the agreed damages for the violation of this agreement.

The "case" shows that, after the dissolution of the co-partnership and the execution of the agreement, the defendant went into the employ of the plaintiff as clerk, solicitor of plumbing and other jobs, and overseer of the plaintiff's workmen, and continued in such employment until November 24, 1897, when he resigned his position with the plaintiff.   It also appears that Michael C. Hawkins, a cousin

of the defendant, formerly in the employ of the plaintiff, had opened
a shop in Geneva, and was engaged in the business of plumbing, in
a small way, at the time the defendant resigned his position with
the plaintiff. The evidence tended to show that after leaving the
plaintiff the defendant was engaged in soliciting plumbing, and fig-
uring upon plans and specifications of jobs of plumbing, at times
stating that it was for Michael, and at others without mentioning to
the customers having jobs of work to be done that it was for an-
other than himself; also, that the defendant assisted Michael in
other ways, recommended him to customers, and transacted a portion
of the business,—on one occasion obtaining a guaranty of payment
for goods furnished upon some jobs; and collecting pay therefor,
without mentioning Michael in the transaction. It is shown, also,
that the defendant, by letter of "M. C. Hawkins, per A. Hawkins,"
applied for quotations of prices of goods for the trade, and after-
wards gave his own check in payment of goods furnished. The de-
fendant, in his testimony, explained all of these transactions as done
simply to assist Michael,—not as his employé, but in a friendly way,
and only casually,—and testified that he had no pecuniary interest
whatever in the business. The theory of the plaintiff at the trial
was that, while this was ostensibly done by the defendant solely for
Michael, the defendant in fact had an interest in the business, and
that he was engaged in soliciting plumbing work to the injury of the
plaintiff's business, and in violation of his covenant not to engage
in the business of plumbing. It appears that the defendant him-
self was not a practical plumber, and that, while with the plaintiff,
his part in the plumbing business was soliciting orders, and con-
tracting for the performance of and overseeing the work.

The case was given to the jury in a very full and careful charge,
in which the learned justice submitted for their consideration these
two propositions: First, that the defendant is liable if the business
of Michael C. Hawkins, in Geneva, was his, or if the defendant was
interested in that business, either wholly or partially; second, that
there is a liability on the part of the defendant if he solicited busi-
ness, or was engaged in the business of soliciting trade for plumbing,
even if Michael C. Hawkins was the owner of the business. The at-
tention of the jury was called to the evidence by reference to the
witnesses by name, and the substance of their testimony stated, and
in conclusion the jury were instructed that:

"If the testimony satisfies you that the business was that of Abraham Haw-
kins, although carried on in the name of Michael C. Hawkins, or if you come
to the conclusion that Abraham Hawkins went out and engaged in the occu-
pation or business of soliciting plumbing jobs for Michael C. Hawkins, in
either instance, then a breach of the contract would be established, the con-
tract would be violated, and the plaintiff would be entitled to your verdict.
If, on the other hand, the evidence fails to satisfy you that that is the case;
if you are not satisfied that the preponderance of the evidence points to that
fact; if the evidence fails to satisfy you of the breach and of the violation of
this contract,—then your verdict will be for the defendant."

No exception was taken by the defendant to the charge as first
delivered by the court, but, after it was concluded, exception was
taken by the defendant's counsel to the charge of the court in re-

sponse to one of the several requests of counsel for the plaintiff, made as follows:

"Counsel for the plaintiff asked the court to charge that if the defendant, as agent or representative of another who is engaged in the prohibited business, solicited jobs of work of the character prohibited by the contract, he is liable to the amount named in the contract. The Court: If he engaged in the business of soliciting, I so charge, in accordance with your request; but it must be that he engaged in the business of soliciting. If he simply, in a casual or occasional way, solicited by way of helping his nephew, I decline. (Counsel for the plaintiff excepted.) Counsel for the plaintiff asked the court to charge that if the defendant, for himself, or as the agent of another, was engaged in business, the plaintiff is entitled to a verdict. The court so charged. Plaintiff's counsel also asked the court to charge that if the defendant, under the name of another, was engaged in soliciting business, the plaintiff is entitled to recover. The Court: If he, under the name of another, engaged in the business of soliciting plumbing, then your verdict should be for the plaintiff. (The defendant excepted.) Counsel for the defendant requested the court to modify the last statement by saying 'if he solicited plumbing for himself.' Counsel for the plaintiff asked the court to charge that if the defendant furnished money to carry on this business, knowing it was to be used for that purpose, the jury may find a breach of the contract, and a verdict for the plaintiff. The Court: If he furnished money for the purpose of carrying on Michael's business, I decline to so charge. If it was his own business, and he furnished the money in it, I so charge."

The serious question in the case arises upon the exception to the charge that the defendant was liable if he, under the name of another, engaged in the business of soliciting plumbing. By itself, standing alone, the language here used might be held to refer to a business of the defendant,—his own business transacted in the name of another. But the court had charged that there was a liability on the part of the defendant, if he was engaged in the business of soliciting trade for plumbing, even if Michael was the owner of the business, and that significance may therefore be properly given to the language here excepted to. The court carefully excluded the idea of liability based upon a casual or occasional soliciting by way of helping Michael; limiting the liability of the defendant to actually engaging in the business of soliciting plumbing, although the business might be owned by another. The contention of the appellant's counsel is that the agreement not to engage in business, as provided in the covenant made by the defendant with the plaintiff, was a reservation "made for the single purpose of preventing defendant from entering into and building up another similar business" (that is, not to engage in a business of his own), and that it did not preclude the defendant from engaging in the same business for another. The language of the covenant is that the defendant "will not engage in the hardware, tinning, plumbing, and gas-fitting business or trade, or either of them, for the period of five years." The agreement is silent as to whether or not it should be the defendant's business. The covenant is, not to be engaged in the business or trade. The language is certainly broad enough to include business or trade of the kind agreed upon, no matter for whom, or who should be the owner of it. The language is capable of either construction or application, and to that extent may be regarded as somewhat ambiguous. In such case the purpose and object of the contract may be consid-

ered, in determining its meaning. "It is a cardinal rule in the construction of contracts that the intent of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated; and, whenever the language used is susceptible of more than one interpretation, the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties, and the subject-matter of the instrument." Jewett, C. J., in French v. Carhart, 1 N. Y. 102. The defendant had been connected with the business before the plaintiff bought an interest in it and became a partner of the defendant. He was the senior member of the firm, and had charge of soliciting customers and taking and executing orders. It was possible for him to take trade which would naturally go to the plaintiff to any place of business in Geneva which the defendant should establish or be connected with. It was the purpose of this covenant to prevent the occurrence of any such possibility during the time stipulated. Its purpose, as put by appellant's counsel, was to prevent the defendant from entering into and building up another similar business. The building up of a similar business for another person by the defendant would be just as injurious to the plaintiff's business as if done by the defendant himself, and would result in the very possibility the covenant was designed to prevent. It is plain that the object and purpose of the plaintiff in requiring this covenant on the part of the defendant were to secure the business to himself for the period of five years free from competition of the defendant as solicitor of plumbing business in Geneva, either for himself or others, during the period, and it is fairly to be inferred that this was the understanding of both parties. We think, within the rule that has been cited, and the rule that, if the intention of the parties be doubtful, that construction is to be adopted which is most beneficial to the covenantee, the plaintiff is entitled to the construction most favorable to his contention. Our conclusion is that no errors were committed upon the trial which call for a reversal of the judgment.

Judgment and order affirmed, with costs. All concur.