## WELLS *v.* FIRST NATIONAL EXHIBITORS' CIRCUIT INCORPORATED *et al.*

1. While contracts in restraint of trade are not favored in the law and are not to be extended in their construction beyond the fair import of the language used, nevertheless such contracts must be reasonably con-

strued, and when the intention of the parties is ascertained it must be effectuated. Where the true meaning of such a contract is equivocal, the circumstances existing when the contract was made, as well as the existence of a custom so well known that the parties must have contracted with the intention that it would apply to their contract, may be shown by parol evidence.

2. The fact that a contract stipulates for the payment of liquidated damages in case of its breach will not exclude the jurisdiction of equity in a case otherwise cognizable therein. If it appear that the performance of the covenant was intended, and not merely the payment of damages in case of breach, equity will, in a proper case, enjoin the breach thereof.

3. Under the pleadings and evidence the judge of the superior court was authorized to find that the threatened damages were incapable of computation and ascertainment, and therefore were irreparable.

4. The charge of conspiracy to procure a breach of the plaintiff's contract was sustained by the evidence.

5. Where, on the interlocutory hearing of an equitable petition to enjoin a breach of a contract upon the ground that the damages which the plaintiff may suffer will be incapable of ready computation and ascertainment, the judge, upon conflicting evidence, reaches the conclusion that the plaintiff has established a right to an injunction, and accordingly grants the same, it is erroneous to allow the defendants to dissolve the injunction upon the giving of a bond to answer the final judgment in the cause.

No. 1253.    June 14, 1919.

Injunction. Before Judge Pendleton. Fulton superior court. November 14, 1918.

On November 11, 1918, Jake Wells filed his petition for injunction, in Fulton superior court, against the First National Exhibitors' Circuit Inc., a Virginia corporation, C. R. Beacham, its agent in Fulton county, Georgia, Criterion Theater Company, a corporation, of Fulton county, Georgia, Sig Samuels, its president, and Willard C. Patterson, its manager, both of Fulton county. Wells alleged, that the First National Exhibitors' Circuit made a contract with him, on March 20, 1918, by which he, for a valuable consideration, was given the right to the exclusive presentation of the "first run," in Atlanta, of the series of moving pictures known as the "Eight Charlie Chaplin Special Releases;" that in pursuance of the contract Wells exhibited the first of the series of said pictures, to wit, the picture called "A Dog's Life," and at the time of the filing of the suit he was about to exhibit another of the Charlie Chaplain pictures; that the Criterion Theater Company had also made a contract with the First National Exhibitors' Circuit, under which they claimed the right to present, concurrently with peti-

tioner, the "first run" of the pictures in question in the city of Atlanta, Georgia; that the Criterion Theater Company made its contract with knowledge that the Exhibitors' Circuit had sold to petitioner the exclusive right to exhibit the picture; that the contract, the result of collusion and conspiracy between the parties thereto, was made for the purpose of injuring petitioner, and the threatened injury is in fact irreparable in damages; and that the language and provisions of the contract made between the plaintiff and the Exhibitors' Circuit were everywhere understood in the moving-picture world to grant the exclusive right to exhibit the series of pictures within the city designated in the contract. The Exhibitors' Circuit, subject to its demurrers, general and special, filed its answer, in which it denied that it had sold to plaintiff the right to the exclusive presentation of the Charlie Chaplain pictures in Atlanta, and denied the charge of collusion and fraud. It also denied injury and damage to the plaintiff by reason of the facts alleged in the petition; and especially averred that the damages were not irreparable, pleading in this connection a stipulation in the contract between it and the plaintiff, by which provision was made for the liquidation of damages in the event of a breach of the contract. It averred that it had the right to contract with the Criterion Company, and that its contract with that company was made in good faith. The Criterion Company, and its officers and agents who were made defendants, answered and denied the charges of fraud and conspiracy made in the petition. They denied that the plaintiff had, under his contract, the right to the exclusive presentation of the pictures named, and denied that he would be damaged by the concurrent exhibition of the pictures by the defendants under their contract; and averred that his damages, if any, were capable of computation. The clause of the contract between the plaintiff and the Exhibitors' Circuit, under which the plaintiff claimed the right to the exclusive presentation of the pictures in question, is as follows: "Undersigned Exhibitor hereby leases from the First National Exhibitors' Exchange eight Charlie Chaplin Special Releases six days on each release on .......... of each week, first week after release date, and agrees to keep and perform the terms herein provided and pay the amounts as specified herein. Each subsequent release after the first to be used on the same day or days of the week at the same number of days after release date.

Theater owner, Jake Wells.  Theater name ........... Seating capacity ........... Street address ........... City Atlanta. Population 175,000.  State Georgia.  Price of the entire series of eight releases $2,000.00, to be paid in installments as per contract below and on reverse side." The clause providing for liquidated damages is as follows: "In case either party hereto shall fail to keep, observe, or perform any condition of this contract on his or its part to be kept, observed, and performed, the injured party shall have and recover of the defaulter as liquidated damages, and not as a penalty, a sum equal to twenty-five per cent. (25%) of the un-earned rental price reserved in this contract.  This stipulation for liquidated damages is made because of the difficulty of proving actual damages in the event of any such default, the actual dam-ages under such contracts as this being speculative and impossible to ascertain."

Upon the interlocutory hearing the evidence for the plaintiff tended to sustain the allegations of the petition.  A large number of persons, prominent in the moving-picture world, testified, that the words in the contract, "first week after release date," coupled with the designation of the city and the population thereof, were universally understood to give to the plaintiff absolute and exclu-sive priority in presentation during the first week after the release date on a given film; that the value of a picture consists in the fact that the "first-run rights" are sold exclusively in a given ter-ritory to one exhibitor; that "subsequent-run rights" in the same pictures are invariably very much less than the "first-run rights;" that the "simultaneous presentation" by two moving-picture houses in the city of Atlanta would very materially reduce the value of the picture to the exhibitor; and that the price stipulated in the con-tract, and which Wells agreed to pay for the right to exhibit the pictures in Atlanta, was the highest price theretofore paid for a like right in a city of the size of Atlanta.  The plaintiff himself testified that the contract was understood to mean that he was to have the right to the exclusive presentation of the pictures during the period and in the city named in the contract; that he paid full value for the right; that the Exhibitors' Circuit had knowledge of his understanding of the contract, and acquiesced in his interpre-tation of it before and after its execution, and had itself so con-strued like contracts made with him in other cities and covering

the same series of pictures. His testimony also tended to show that the Criterion Company and its officers knew of the contract, undertook to make a contract with the Atlanta manager of the Exhibitors' Circuit, were refused, and finally succeeded in closing a contract under which they claimed the right to exhibit the pictures in Atlanta with the Exhibitors' Circuit directly. The evidence on behalf of the defendants tended to show that the contract between Wells and the Exhibitors' Circuit did not confer upon the plaintiff the right to the exclusive presentation of the pictures; that the language of the contract did not give such exclusive right, and was not and is not understood in the trade to convey an exclusive right, but that the contract simply meant that the plaintiff should have the right to exhibit the pictures during the first week after the pictures were released by the Exhibitors' Circuit, the distributors; that in all moving-picture contracts, when a sole or exclusive right is granted, the contract expressly so provides; that no custom or usage existed to the contrary; and that while the Criterion Company at the date of its contract had knowledge of the Wells contract, there was no fraud, collusion, or conspiracy between the defendants. There was also evidence to the effect that the picture had been exhibited by both theaters prior to the hearing, and that the plaintiff's house was "crowded" during each performance.

The court passed the following order: "The above matter having come on for a hearing, and after the hearing and upon consideration thereof, it is ordered and adjudged that the prayers of the petition be granted, and the defendants and each of them be and are hereby restrained and enjoined from exhibiting the picture in the City of Atlanta, Ga., known as ' Shoulder Arms, ' as well as all and each of the series of eight 'Charlie Chaplin Special Releases' covered by the contract set up in the petition in this case. The defendants may dissolve the restraining order and injunction by the giving of a joint and several bond by each of the defendants, First National Exhibitors' Circuit Inc., and Criterion Theater Co., in the sum of ten thousand ($10,000.00) dollars payable to the plaintiff, the surety or sureties on said bond to be approved by the clerk of this court and such surety or sureties to become parties to this cause upon the signing and delivery of the bond and approval of same by the clerk. The condition of said bond shall be to answer the final judgment in the cause, whatever it may be,

under the present pleading or under any amendment of same hereafter allowed by the court. Said bond to be filed by 4:30 o'clock p. m. this date." Neither of the defendants excepted to the order, but gave the bond as provided therein. The plaintiff excepted to the judgment in so far as it allowed the defendants to dissolve the interlocutory injunction by the giving of a bond.

*Dodd & Dodd* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiff.

*McDaniel & Black, E. A. Neely, J. A. Branch,* and *H. J. Haas,* for defendants.

GEORGE, J. (After stating the foregoing facts.) It seems to be conceded that if the plaintiff was not entitled to an injunction initially, he could not have been injured by the dissolution of the injunction granted, and that the order allowing the defendants to dissolve the injunction by the giving of a bond affords to plaintiff no right of complaint. The position of the defendants in error is that no injunction should have been granted in the first instance, because: (1) The contract upon which the plaintiff in error. relies is plain and unambiguous, and does not grant in express terms the right to the exclusive presentation of the pictures in question in the city of Atlanta. (2) The contract itself contains a provision for liquidated damages. (3) The evidence did not authorize a finding that the plaintiff would be damaged, or that his damages were incapable of exact computation. In all events the Criterion Theater Company should not have been enjoined, for the reason that no conspiracy to injure and damage the plaintiff by procuring the Exhibitors' Circuit to breach its contract with him was proved.

1. We can not agree that the contract is plain and unambiguous. The trial judge evidently regarded the contract as ambiguous, and admitted evidence to explain its meaning. It is true that the contract does not in express terms grant to the plaintiff the right to the exclusive presentation of the pictures in the city of Atlanta; but when the language of the contract, to wit, "first week after release date," and the designation of the city, "Atlanta population 175,000," are considered in connection with the fact that no particular theater in Atlanta is named in which the pictures might be exhibited, a very forceful argument favorable to the construction placed upon the contract by the plaintiff in error is

presented. It will be observed that the contract contains a blank for the insertion of the theater in which the pictures may be exhibited, but this blank was not filled in by the parties to the contract. In a recent work entitled "The Law of Motion Pictures and the Theater," by Frohlich and Schwartz, of the New York City bar, is found this language: "The licensee secures the sole right to produce or reproduce the play, and with it the accompanying right to restrain invasions of his license, only when his grant is exclusive. Where no mention is made in the agreement of the exclusiveness of the grant, the court will assume that the grant is not exclusive, and the author may grant the same rights, for the same period, to third parties" (page 6). Again, the same authors (page 73) say: "Unless it is expressly agreed that the license granted shall be a sole and exclusive one, the licensor may grant licenses to produce the same play for the same period and within the same territory to any number of persons." The following authorities are cited by the authors: Widmer *v.* Greene, 56 How. Pr. (N. Y.) 91; Barnett *v.* Q. & C. Co., 226 Fed. 935 (141 C. C. A. 539; Stern *v.* Laemmle, 133 N. Y. Supp. 1082 (74 Misc. 262); Hart *v.* Cort, 144 N. Y. Supp. 627 (83 Misc. 44); Willis *v.* Tibbals, 1 Jones & Spencer (33 N. Y. Super. Ct.), 220. If, as contended by the defendants in error, the meaning is that the licensee or lessee secures the exclusive right to exhibit the pictures, and with it the accompanying right to restrain invasions of the license, only when his grant to such exclusive right is expressed, the decisions cited do not, in our opinion, sustain the text. On the contrary, those decisions recognize the right to show by parol evidence the existence of such a well-known custom that the parties must have contracted with the intention and the expectation that it would apply to their contract, at least where the contract is equivocal or ambiguous. Hart *v.* Cort, supra. While a custom which is repugnant to the terms of an express contract will not be permitted to operate against it, evidence of a custom or usage generally and universally recognized in the trade and known to the parties to the contract, and not repugnant to the plain terms of the contract, is admissible to explain it. Moreover, a negative convenant is often necessarily implied in contracts similar in nature to the one under consideration. Montague *v.* Flockton, 16 L. R. Eq. 189; Hoyt *v.* Fuller 19 N. Y. Supp.

962; Clark on Equity, § 80. We concede that contracts in restraint of trade are not favored in the law, and are not to be extended in their construction beyond the fair and natural import of the language used; but such contracts, in our view, must be reasonably interpreted, and when the intention of the parties is ascertained it must be effectuated. 13 C. J. 556, and cases cited in notes 87, 88. The Supreme Court of Alabama, in Smith v. Webb, 176 Ala. 596 (58 So. 913, 40 L. R. A. (N. S.) 1191, 1193), a case construing a contract in restraint of trade, said: "Whether the intent of the parties was that the vendee should not engage in the livery business in his own name at that place, or whether he should not contribute by his services, presence, and prestige to the conduct of such a business owned by another, are questions arising from the terms employed in the provisions, and make the true meaning equivocal, and hence present a case calling for the full discovery of the surrounding circumstances existing when the contract was made," citing Corwin v. Hawkins, 42 App. Div. 571 (59 N. Y. Supp. 603).

2. It is true that the contract contains a provision for liquidated damages in the event of its breach. Such provision is, however, by no means controlling. "But the taking of a bond in connection with a covenant does not exclude the jurisdiction of equity in a case otherwise cognizable therein, and the fact that the damages in the bond are liquidated does not change the rule. It is a question of intention to be deduced from the whole instrument and the circumstances; and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of a breach, the covenant will be enforced." Diamond Match Co. v. Roeber, 106 N. Y. 473 (13 N. E. 419, 60 Am. R. 464). See also Busk v. Wolf, 143 Ga. 18 (84 S. E. 63); American Ice Co. v. Lynch, 74 N. J. Eq. 298 (70 Atl. 138); High on Injunctions (3d ed.), § 1498. It is only necessary to add that a perusal of the whole contract under consideration shows beyond doubt that the faithful performance of its covenants was intended.

3, 4. The contract in this case itself provides: "This stipulation for liquidated damages is made because of the difficulty of proving actual damages in the event of any such default, the actual damages under such contracts as this being speculative and impossible to ascertain." While this recital in the contract is

not conclusive, we think the parties have rightly determined that the damages to plaintiff in error in the event of the breach of the contract would be irreparable. When the nature of the business is considered, this conclusion is irresistible. While the evidence tended to show that the house operated by the plaintiff in error as a moving-picture house was crowded during a certain performance, although the Criterion Company was exhibiting the same picture elsewhere at the same time in the city of Atlanta, this fact does not conclusively show that no damages whatever would flow to the plaintiff in error from a breach of his contract. Whether his theater would be filled to its capacity on subsequent dates, if the Criterion Company were permitted to exhibit the same picture at the same time (a right which many other moving-picture houses in the city of Atlanta might likewise claim and exercise if the contention made by the defendants in error is sustained), can not be certainly determined. Even so, the right, for a valuable consideration, to present the pictures in question during the first week after the release date, and exclusively, is a valuable right, and will be protected by a court of equity. The enterprise and reputation of the theater management in such case is an element that can not be left out of view. The evidence in the record authorized the judge to find a conspiracy by the defendants to violate the plaintiff's contract with the Exhibitors' Circuit, and in a measure to deprive him of the full benefit of that contract. Some of the evidence upon this issue may have been objectionable, but no exception was taken to it, and it was of some probative value. Where evidence has no probative value, the court can not base a finding of fact thereon. But if it has probative value, the fact that it was improperly admitted, in the absence of any exception to its admission, is of no consequence.

5. We therefore reach the conclusion that that part of the order which gave to the defendants the right to dissolve the injunction upon the making of a bond was erroneous. The case presented is not one of the grant of an injunction upon condition. The injunction was unconditionally granted. A means for its dissolution was merely provided. "Where, on the interlocutory hearing of an equitable petition to enjoin a trespass, the judge upon conflicting evidence reaches the conclusion that the plaintiff has established a right to an injunction, the same should be granted

without qualification when the evidence shows that the damages he may suffer will be incapable of ready computation and ascertainment; for in such a case a bond given by the defendant to answer for any damages which may be had against him can not afford adequate protection to the plaintiff." *Hart* v. *Lewis, 126 Ga.* 439 (55 S. E. 189). "An injunction against irreparable damages necessarily implies that a bond or solvency is not good cause for allowing a trespass to continue." *Woodall* v. *Cartersville Mining etc. Co., 104 Ga.* 156 (30 S. E. 665). These cases are in principle controlling. If the plaintiff would suffer irreparable damages in the absence of an injunction, certainly a bond to pay the damages, which are not capable of "ready computation and ascertainment," would not afford him full protection. In so far, therefore, as the judge allowed the defendants to dissolve the injunction granted upon the giving of a bond, his judgment will be

*Reversed. All the Justices concur, except Beck, P. J., absent.*