## COMMERCE REALTY CO. v. WARNER BROS. PICTURES, Inc., et al. *
### (No. 8047.)

Court of Civil Appeals of Texas. San Antonio. June 20, 1928.

1. **Injunction** ⬉136(2)—**Theater owner held entitled to temporary injunction in suit to restrain motion picture producers from violating contract under which plaintiff was to be offered superspecial pictures before other exhibitors.**

Where theater owner entered contract with motion picture producers under which it was to purchase certain pictures, and producers were to offer it all superspecial pictures before offering them to other exhibitors in city, and such contract was partially performed, theater *held* to have shown case of probable right and certain injury entitling it to temporary injunction in suit to restrain producers from violating contract.

2. **Contracts** ⬉10(1), 54(1)—**Where contract was accepted by parties, and partly performed, and consideration paid, defendant in action to restrain breach cannot plead want of consideration or unilateralness.**

In suit to restrain violation of contract, defendants cannot successfully plead want of consideration or unilateralness of contract, where contract had been accepted by parties, consideration had been paid, and contract partly performed, since one cannot successfully plead want of consideration or its unilateralness in contract which he has performed in whole or in part.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted.

**3. Injunction ⚎137(4)—Ordinarily, injunction will not issue to prevent conjectural injuries.**

. As general rule, injunctions will not be granted to prevent mere conjectural injuries.

**4. Appeal and error ⚎563—In injunction case, statement of facts should not be disregarded because prepared in question and answer form (Rev. St. 1925, arts. 2239, 4662).**

Court of Civil Appeals should not disregard statement of facts in injunction case because prepared in question and answer form, since different procedure is provided in such cases by Rev. St. 1925, art. 4662, and art. 2239, which is general statute relating to statement of facts, is inapplicable.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by the Commerce Realty Company against Warner Bros. Pictures, Incorporated, and others. Plaintiff's application for a temporary injunction pending final trial on merits was denied, and it appeals. Reversed and remanded.

Birkhead, Lang & Beckmann, of San Antonio, for appellant.

Strickland & Ridgeway, and Nelson Lytle, all of San Antonio, for appellees.

COBBS, J. This suit was instituted by appellant against appellees for a temporary injunction to restrain them from doing certain acts set out in the bill, in violation of an alleged express contract, which is set out hereinafter, between appellant, on the one hand, and the appellees on the other, concerning the sale and purchase of certain so-called movie pictures, and to compel a performance of the contract.

The plaintiff, Commerce Realty Company, a Texas corporation, brought this suit for injunction against the defendants Warner Bros. Pictures, Incorporated, Vitagraph, Incorporated, Publix Theatres Corporation (of New York), Publix Theatres Corporation (of Texas), Southern Enterprises, Incorporated, San Antonio Amusement Company, and W. J. Lytle. Plaintiff alleged that it had erected in San Antonio, Tex., prior to May 1, 1926, a theater building at a cost of over $1,000,000, in contemplation of acquiring the alleged pictures and for the exhibition of motion pictures generally, such theater being known as the Aztec Theatre.

Plaintiff further alleged that on or about May 11, 1926, plaintiff made a contract with Warner Bros. Pictures, Incorporated, and Vitagraph, Incorporated, acting by and through O. C. Ezell, their duly authorized agent, whereby it was agreed that, in consideration of plaintiff's agreeing to buy the 1926–1927 season's product of Warner Winners pictures (viz. the ordinary class of pictures), said Warner Bros. Pictures, Incorpo-

rated, and Vitagraph, Incorporated, would offer to plaintiff any and all superspecial pictures thereafter produced by Warner Bros. Pictures, Incorporated, at a reasonable price before submitting or offering any of such superspecial pictures to any other exhibitor in San Antonio, and that upon such submission plaintiff should have the right to use any and/or all such superspecial pictures accepted by it by paying said defendants a reasonable price therefor.

Plaintiff prayed for a temporary injunction, among other things, commanding Warner Bros. Pictures, Incorporated, and Vitagraph, Incorporated, and their officers, agents, and employees, and representatives to desist and refrain from offering to sell, lend, or lease, and commanding them not to sell, loan, or lease the said superspecial picture "The Jazz Singer," together with any mechanical appliances in connection therewith to any other person, firm, or corporation in San Antonio for use in any other theater in San Antonio without first offering the same for sale to plaintiff at a reasonable price. Plaintiff further prayed for a permanent injunction to the same effect against all of said defendants upon final hearing of the suit upon its merits.

Upon the filing of plaintiff's original petition a temporary restraining order against all of the defendants was made by the court on the 25th day of February, 1928, prohibiting them from doing any of the acts complained of in plaintiff's petition, and setting the case for hearing on application for temporary injunction. Writs were duly served on all the defendants, and each of the defendants duly filed answer to plaintiff's petition.

Hearing on the application for temporary injunction was adjourned from March 3d to the following Monday, March 5th, and evidence was heard by the court from March 5th to 9th inclusive. At the conclusion of the evidence and after arguments of counsel, the court announced that it would take the matter under advisement and announce its decision at a later date, and thereafter, on April 4, 1928, the court rendered its order refusing and denying plaintiff's application for temporary injunction pending final trial of the suit on its merits. In such order the court continued in effect the temporary restraining order theretofore made by the court on February 25, 1928, until and including May 19, 1928, in order to preserve the statu quo while giving the honorable Court of Civil Appeals an opportunity to pass on the appeal from the court's action in refusing the temporary injunction sought by plaintiff during the pendency of the suit.

Plaintiff duly filed the additional bond required by said order, and also filed an appeal bond, and duly filed transcript of the record in this court on April 23, 1928, and transcript of the evidence on April 24, 1928,

and this suit is now before this court for review.

The contract was referred to as an option contract, and likewise discussed in the oral argument before the court as an option contract, which appellees contend is unenforceable as lacking in mutuality. It is alleged as follows:

"That on or about May 11, 1926, the defendants Warner Bros. Pictures, Incorporated, and Vitagraph, Incorporated, acting by and through one C. C. Ezell, their authorized agent, made and entered into a contract with plaintiff, whereunder the said two defendants, for a valuable consideration, agreed that plaintiff should have submitted to it, before and in advance of submission to other theaters in the city of San Antonio, a proposition or 'offer' of the right to use and exhibit any and all superspecial pictures produced by the defendant Warner Bros. Pictures, Incorporated, in plaintiff's Aztec Theatre in San Antonio, prior to their exhibition elsewhere in San Antonio, and that upon such submission plaintiff should have the right to use any and/or all of said superspecial pictures accepted or selected by plaintiff upon paying defendants for such picture or pictures a reasonable price or prices; that the valuable consideration mentioned in the preceding paragraph was the agreement upon the part of plaintiff to purchase from the defendants a series of motion picture films known as the 'Warner Winners' and to pay therefor the sum of $21,000; that in connection with said contract of May 11, 1926, the defendant Warner Bros. Pictures, Incorporated, made, executed and delivered to plaintiff the following memorandum, to wit:

" 'Dallas, Texas, May 11, 1926.

" 'Mr. Sam E. Morris, General Manager, Vitagraph, Inc., 1600 Broadway, New York, N. Y.— Dear Mr. Morris: Mr. Wm. Epstein, who is just completing the Aztec Theatre, San Antonio, Texas, and which he advises is the most beautiful house in America, called on us to-day in an effort to secure a contract covering all superspecials such as Barrymore, Chaplin, etc.

" 'We explained to Mr. Epstein that all of these productions would be given a $2.00 showing and no contracts or agreements could be entered into until the value of the picture had been established. We would, however, in every case submit our proposition covering each picture to him before selling elsewhere. In other words, if we could agree on price, terms, etc., a contract would be given.

" 'Yours very truly,
" 'C. C. Ezell.' "

There are numerous allegations in the bill setting out, directly and argumentatively, various phases of the contract, not denied, alleging, among other things, partial execution of the contract by the purchaser of certain pictures and the use thereof, and the final breach of the contract by appellees; alleging further:

"Plaintiff shows that the breach on January 5, 1928, by the defendants, of the contract hereinabove described, will, if permitted to continue, work a great and irreparable injury to plaintiff; that plaintiff has no adequate remedy at law; that there is in the United States only a limited number of superspecial moving pictures produced annually; that it is an imperative necessity of a theater exhibiting moving pictures that periodically or at intervals it have an unusual or superspecial moving picture, such as the said 'The Jazz Singer'; that plaintiff took up with defendants the matter of purchasing the right to use and exhibit said superspecial picture as early as November, 1927, and it was not until the 5th day of January, 1928, that said defendants definitely breached the contract hereinabove alleged."

[1] The material question of law for the court to consider under the alleged facts set forth in the bill and answer is whether said so-called option contract is valid and enforceable. The pleadings show that the appellant spent large sums of money from time to time and placed itself in a position to secure this ultimate right to purchase the pictures as provided for in the option contract, having already obtained many pictures under its terms from time to time. In speaking of the enforceability of such contracts, and especially of such so-called option contracts as here provided for, to take them out of the unilateral class, see what is aptly said by our Supreme Court in Corsicana Petroleum Co. v. Owens, 110 Tex. 571, 222 S. W. 155, speaking through Chief Justice Phillips:

"The grant of the right to the grantee to surrender the lease by the payment of an amount in addition to the original consideration and all other amounts then due under the instrument, relieved the grantee of any requirement to complete a well. But the grantors, for an independent consideration, by their contract agreed that the grantee should have that option. The unilateral character of the agreement for the option is of no consequence. A contract for the grant of an option is necessarily unilateral. An option is granted for the purpose of enabling the grantee to exercise the particular right or not, as he may elect. The value of it consists in that privilege. Owners of property have the unquestioned power to grant such rights with respect to it. They are free to validly make such contracts. When so made, it is the duty of courts to uphold and enforce them. A contract for the grant of an option, limited to a definite time, is therefore valid and enforceable if supported by an independent consideration. National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, [68] 86 S. W. 979. In many valid contracts the promise is only on one side. They are unilateral. As to them, the inquiry is not whether they are of that character, but whether they are supported by a consideration. In return for the consideration paid them, the grantors here agreed that the grantee should have the right to surrender the lease on the terms stated. If the right was not exercised, the grantee would remain bound by its covenants. If exercised, the grantors would be free to deal with the premises. A surrender was not to affect any existing liability. There is nothing inequitable about such an agreement. Its presence in the instrument did not invalidate it. Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed.

856; Rich v. Doneghey, 177 P. 86 [71 Okl. 204], 3 A. L. R. 352."

The letter of May 11, 1926, is admitted and fully set out in appellees' brief, that being the important and undisputed issue, and there is no controversy as to its contents.

[2] In this case the contract was partially performed and the plaintiff has proven a case of probable right and certain injury to that right, which can only be preserved by a temporary injunction. The doubt, if any, may relate either to the facts or the law or both, still a probable injury to that right has been shown and that right can only be preserved by holding it in statu quo until a final hearing on its merits is had. If, as alleged, by reason of the breach of the contract, the appellant is unable to get an adequate supply of super-special pictures and that none controlled by Famous Players will be secured by appellant, then the very life of the Aztec Theatre, its reputation, and its popularity with theater-going people may be jeopardized. We think "the balance of convenience in determining the right to and expediency of this relief is certainly with the appellant." This contract having been accepted by the parties, a consideration having been paid, and the contract partly performed, it does not lie in the mouth of appellees to successfully plead a want of consideration or its unilateralness.

"One cannot successfully plead a want of consideration, or unilateralness, in a contract which he has performed in whole or in part." Bettinger v. North Fort Worth Ice Co. (Tex. Civ. App.) 278 S. W. 466, citing Storm v. U. S., 94 U. S. 76, 24 L. Ed. 42, Texas Farm Bureau v. Stovall, 113 Tex. 273, 253 S. W. 1105, and other cases, including Tex. Cent. Ry. Co. v. Eldredge (Tex. Civ. App.) 155 S. W. 1010 (not an injunction case); but quoting with approval from a Texas Supreme Court decision:

"There can be no doubt but that a contract may be so made as to be optional on one of the parties and obligatory on the other, or obligatory at the election of one of them."

As said in Montgomery Enterprises v. Empire Theatre Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987:

"Complainant's right in the picture 'The Isle of Conquest,' Norma Talmadge starring, was exclusive as to its first run at Montgomery, Ala. Its receipt and date of its release by Select Pictures Corporation were admitted by its manager to have been on or about October 20, 1919. Its first run privilege was of great value in the business of the kind in which instant parties are and were engaged. Wells v. First Nat. Exhibitors' Circuit, 149 Ga. 200, 99 S. E. 615, 618. Select Pictures Corporation having granted to complainant the exclusive privilege of showing said picture at its theater in Montgomery, Ala., before its exhibition at other theaters in said city, was a valuable right secured by the latter under the contract, and other theaters in Montgomery could not legally exhibit the same in disregard of complainant's contract rights of first run, after notice or knowledge of complainant's said rights. This was beyond the rights of the law of competition. The averments of the bill are sufficient to charge notice or knowledge to the resident defendants of complainant's contractual right to first-run exhibitions of Norma Talmadge pictures within the city of Montgomery, where complainant and defendant were prosecuting rival businesses and had done so for a long period antedating defendant's purchase of the picture in question. The omission on the part of defendant to seek information of complainant, who it knew was or had recently been in the possession of the exclusive right of exhibiting the first run of pictures by said artist, and knew of the custom throughout the country and in this city governing same, was a failure to prosecute an inquiry with due diligence. 2 Pom. Eq. Jr. (3d Ed.) § 607, p. 962; Ivy v. Hood, 202 Ala. 121, 79 So. 587.

"There is no adequate remedy at law for the protection of complainant's rights. A statutory action of detinue for the recovery of the property in specie will not provide an adequate remedy at law for a breach of the contract to furnish moving picture films. Raftery v. World Film Corp., 180 App. Div. 475, 167 N. Y. S. 1027, 1032; 36 Cyc. 557. If detinue had been resorted to by complainant to secure possession of the film, defendant having the statutory period of five days in which to give bond and retain possession of the chattel (Code, §§ 3778, 3780; Nixon v. Smith, 193 Ala. 443, 69 So. 117), and was exhibiting the same at the time the temporary injunction was issued, before the time fixed by the statute for delivery of the property, etc. (Code, § 3778), the film would have lost its value to complainant as a first-run picture by defendant's continued exhibition thereof. The rule of the inadequacy of remedies at law in such cases is well stated in 36 Cyc. 557, thus: 'If the specific thing contracted for is desired by plaintiff, if it cannot be duplicated, and if his reason for desiring it or the other circumstances of the case are such that money damages would not be an adequate compensation to him for its loss, equity will decree its delivery to him. The jurisdiction for this purpose is an outgrowth of, and closely connected with, the remedy for the delivery up of chattels of this special nature tortiously withheld from their owners. In such cases the legal remedies of replevin and detinue are subject to defects of procedure which prevents the successful plaintiff from invariably recovering possession of the chattel.' "

[3] Ordinarily, injunctions will not be granted to prevent mere conjectural injuries, but here the prior exhibition of the pictures was and is shown to be a very valuable right under the contract.

[4] Upon re-examination of our ruling on the question of the statement of facts filed, which we originally disregarded because prepared in question and answer form, we now conclude we were in error because the statement of facts should have been considered. We overlooked the procedure which provides an exception in appeals in injunction cases, different from general appeals in other cases.

Article 4662, unlike the general law, provides for appeals "in term time or in vacation, * * * to the Court of Civil Appeals by filing the transcript in such case with the clerk of the said appellate court not later than twenty days. * * * Such case may be heard in the Court of Civil Appeals or Supreme Court on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below."

The exception in this statute is broadly different from the general law. It is to be heard not only on "bill and answer," but upon "such affidavits and evidence as may have been admitted by the judge of the court below." Filing the transcript within the required time is imperative, but not so in regard to any statement of facts, for none is provided for in such appeals. It is only required that the hearing in the Court of Civil Appeals be upon bill and answer and "such affidavits and evidence as may have been admitted by the judge of the court below." How this evidence is to be preserved is immaterial, just so that it appears sufficiently identified in the Court of Civil Appeals as having been considered by the trial court. In the case of Whitham & Co. v. Hendrick, 1 S.W.(2d) 907, a statement of facts was filed in the Court of Civil Appeals but not in the trial court. That court, speaking through Chief Justice Conner, said:

"The statement of facts was filed in this court in due time. It was duly agreed to by counsel of the several parties, and approved by the trial court. In the case of City of Fort Worth v. First Baptist Church, 268 S. W. 1016, we held that, under article 4644, Rev. Statutes, as amended in chapter 17 of the General Laws of the Thirty-Sixth Legislature (see Vernon's Ann. Civ. St. Supp. 1922, art. 4644), granting the right of appeal to parties in civil suits from orders granted, and refusing or dissolving temporary writs of injunction, notice of appeal was not a prerequisite of the right. We so held, citing authorities, on the ground, substantially, that the remedy of appeal from such orders was to be found only in special provisions not relating to final judgments, and in which there was no requirement that notice of appeal should be given. The article of the statute above referred to has been substantially re-enacted in the revision of 1925. Article 2251, Rev. Statutes of 1925, provides that appeals from orders of the district courts or county courts granting or dissolving temporary injunctions shall lie in the cases and 'in the manner' provided in the title. 'Injunctions.' "

Article 4662, Rev. Statutes of 1925, of the title relating to injunctions, reads as follows:

"Such case may be heard in the Court of Civil Appeals or Supreme Court on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below."

Justice Conner further says, in the foregoing opinion:

"It may thus be seen that in the statute relating to the subject a statement of facts duly made up, agreed to by counsel, and approved by the trial judge, may be considered by us on appeal, regardless of the fact that the statement was not filed in the district court; there being no such requirement in the special procedure relating to the subject."

We think it is clear that the general statute relating to statement of facts (article 2239) and requiring them to be filed in the trial court is not applicable and mandatory in an appeal in a temporary injunction case. That fact is true because article 4662 provides the exclusive machinery for appeal in such cases, and it does not require it in appeals in injunction suits. That latter article also does not require a narrative statement of facts to be filed; it does not do so either expressly or by any manner of implication.

Nothing about the statute says or implies that the evidence must be presented by a narrative statement of facts, any more than it says or implies that it must first be filed in the trial court. Fort Worth Imp. Dist. No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; M., K. & T. Ry. Co. of Texas v. Waggoner, 102 Tex. 260, 115 S. W. 1172; Gerneth v. Galbraith-Foxworth Lumber Co. (Tex. Civ. App.) 6 S.W.(2d) 215.

Since only 20 days are given in which the transcript is required to be filed in the Court of Civil Appeals, it is obvious that in a heavily litigated trial, where there was much testimony and many witnesses examined, it would be almost impossible to transcribe evidence to a narrative form, to comply with the rules prescribed for other trials, hence a different rule is provided, as will be seen in injunctions.

We withdraw that part of our opinion in stating we were not at liberty to consider the so-called statement of facts and the separately filed exhibits. They were considered by the trial court as evidence, as shown by the indorsement and approval of the court, and now we likewise consider them here.

We found and stated in the original opinion enough really to show that there was evidence in the record before the court, considering the admissions in the answer, to support our judgment. But in now considering the so-called statement of facts, there can be no doubt but that the evidence proved a case of probable right and certain injury to that right that would occur unless the strong arm of a court of equity be used to restrain appellee, during the pendency of the suit, from further committing those injuries.

We do not feel called upon to do more than we have done in our original opinion; that is, direct the honorable trial court to grant to appellant during the pendency of this suit a temporary injunction restraining the defendants, as prayed for in plaintiff's first amended original petition, from doing or permitting to

be done any and all the acts described and set out in said petition.

Appellant's motion for rehearing is granted to the extent stated herein, and appellees' motion to reject the statement of facts is overruled.

The original opinion will be withdrawn and the foregoing substituted therefor.

The motion of appellees on rehearing is overruled.

Reversed and remanded.