## LORD v. PATHÈ NEWS, Inc.
### No. 250.

Circuit Court of Appeals, Second Circuit.
June 13, 1938.

Phillips & Nizer, of New York City (Louis Nizer, Arthur B. Krim, Seymour M. Peyser, and Sidney Freidberg, all of New York City, of counsel), for appellant.

Cravath, de Gersdorff, Swaine & Wood, of New York City (Wm. D. Whitney and Harold R. Medina, Jr., both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This action, begun in a state court, was removed to the district court on the ground of diverse citizenship. It seeks to recover damages for non-performance by Pathe News, Inc., of a contract with the plaintiff. Before the plaintiff had completed his proof the trial judge suggested that the defendant's counsel move for a dismissal. Such a motion was then made and granted. The trial judge thought that the contract was too indefinite to be enforceable. The correctness of this ruling is the first question to be considered.

The plaintiff is a radio and motion picture actor who was widely known in 1932 for his radio characterization of the role of "Seth Parker." In September of that year he purchased the four-masted schooner "Georgette" and set about preparing it for a cruise around the world. He conceived the plan of keeping himself before his radio and motion picture admirers by broadcasting from strange and interesting places and by sending back motion pictures for exhibition during the progress of the cruise; and the cost of the cruise was to be diminished by soliciting supplies and equipment from manufacturers in exchange for the privilege of advertising that their products had been used exclusively on the expedition. In the summer of 1933 he discussed the plan with Mr. Courtland Smith, the president of Pathe News, and a written

agreement,[1] drawn up by Mr. Smith, was executed by the parties. Thereafter Mr. Lord completed reconstruction of the vessel, obtained the installation of a short wave broadcasting equipment, successfully solicited nearly $100,000 worth of merchandise, and arranged to publicize the expedition by a cruise along the Atlantic Coast, with broadcasts sponsored by the Frigidaire Corporation, and with stops at various ports, where thousands of persons visited the vessel and public dinners and honors were tendered to Mr. Lord. With an incredible amount of ballyhoo the expedition thus got under way. When the vessel reached New York in December of 1933, Mr. Lord requested that the motion picture equipment, which Pathe had agreed to provide, be put aboard and that the three men to be furnished by Pathe prepare to join the schooner. By letter dated January 4, 1934, Pathe refused to perform its part of the contract because of Lord's alleged failure to start the cruise during the month of September, 1933. Mr. Lord then employed three other men to take the pictures. The pictures they took were a complete failure and were never exhibited. The damages sued for include the expenses incurred by the plaintiff in supplying motion picture equipment and film and in employing a supervisor of production, a camera man and a sound engineer in lieu of those agreed to be furnished by the defendant.

We think the written agreement of July 26, 1933 sets forth the obligations of the parties with sufficient definiteness to be a valid contract. The plaintiff was to provide quarters, rations and free transportation for three men on a cruise of approximately eighteen months, one of the men to be in charge of making motion pictures, one a camera man, and one a sound engineer. The defendant was to supply these men, that is, pay their wages, and to furnish equipment and film for making pictures. It was agreed that expenses incurred on land in making pictures should be divided equally, and any profits from showing them be similarly shared. As to the amount of expenses to be incurred on land in making pictures, both parties were content to put themselves into the hands of the defendant's employee, Begg. He was to "have charge of the making of the motion pictures." This gave him discretion as to what to photograph and how much to spend upon a picture, but he was bound to use his judgment in good faith to advance the common business. In this respect the contract was at least as definite

---

[1] Mr. Lord testified that they first came to an oral agreement and "shook hands" upon it. The subsequently executed writing reads as follows:

"New York City, N. Y.

"This agreement duly made and entered into the day of July 26, 1933 between Pathe News, Inc., a corporation organized and existing under and by virtue of the laws of the State of Delaware, party of the first part, and Phillips H. Lord, party of the second part.

"Witnesseth, that for and in consideration of the mutual promises hereinafter contained and the payment of one dollar ($1.00) by each to the other in hand paid, receipt of which is hereby acknowledged, the parties hereto have agreed as follows:

"(1) That Phillips H. Lord agrees to transport on board the auxiliary schooner Georgette, sailing from New York to New York, and to provide all food and sustenance for, during a period of approximately eighteen months from the date of sailing, three men hereinafter designated by Pathe News.

"(2) That Pathe News, Inc., agrees to provide, for the purpose of making sound and silent motion pictures, (a) John M. Begg, who will have charge of the making of the motion pictures, (b) a cameraman, Harry W. Smith, (c) a sound engineer, and (d) necessary equipment and film.

"(3) That the expenses incurred on land for the sole purpose of making motion pictures will be shared equally by Pathe News, Inc., and by Phillips H. Lord.

"(4) That the proceeds, i. e., the gross income over and above the cost of distribution, necessary advertising and prints, received from the sale or rental of all motion pictures produced during the voyage of the Georgette will be shared equally as follows: fifty per cent. to Pathe News, Inc., and fifty per cent. to Phillips H. Lord.

"In witness whereof, the parties hereto have caused these presents to be signed on the day and year first above written.

"Pathe News, Inc.

"By (signed) Court. Smith.

"Phillips H. Lord

"By (signed) Phillips H. Lord.

"Addition: There shall be a minimum of thirteen shorts and one feature picture released as soon as possible and the distribution contract and other expenses shall be okayed by both parties.

"(signed)  P. H. Lord

"(signed)  J. Connolly."

as the familiar "satisfaction" contract. See Am.Law Inst., Contracts, sec. 265. Nor was Begg's discretion left wholly without bounds; the "addition" provision specified a minimum of thirteen shorts and one feature picture, and the general character of the pictures to be taken was restricted by the very nature of the contemplated expedition to strange and out-of-the-way places. In Anderson v. Blair, 202 Ala. 209, at page 213, 80 So. 31, at page 35, the court said: "It may be said, no doubt, of the great majority of contracts of joint adventure and of partnership, that they do not point out precisely what each party is to do under them. Such a provision is quite unusual, and, we should say, quite impossible in many cases. The law exacted of each of the parties the utmost good faith and fairness in the prosecution of the common enterprise * . * * ." See, also, Alderton v. Williams, 139 Mich. 296, 102 N. W. 753; Antoniades v. Pan American Petroleum & Transport Co., D.C.S.D.N.Y., 43 F.2d 664.

The defendant argues that essential terms were still to be agreed upon because of the clause in the "addition" provision that "the distribution contract and other expenses shall be okayed by both parties." We construe this to mean that before the distribution contract was let each party must pass upon it to say whether he thinks it protects the common interest of their joint adventure. So too, as to "other expenses", that is, whether the proposed expenses were reasonably appropriate and necessary to the proper exploitation of the pictures. This was not too uncertain a standard; it could be referred to the customary way of exploiting such films. See Wells v. First Nat. Exhibitors' Circuit, 149 Ga. 200, 99 S.E. 615; T. H. Flood & Co. v. Bates, 7 Cir., 283 F. 364. The "other expenses" refer to the costs of distribution, advertising and prints referred to in clause (4), not to the expenses of making pictures mentioned in clause (3). We hold that the contract as it reads is not too indefinite to be capable of enforcement.

There remains the defendant's contention that the judgment should be affirmed because the plaintiff can recover no more than nominal damages, even if the contract be held valid. But the termination of the trial before proof of damages was made precludes the sustaining of this contention. The plaintiff's bill of particulars specifies, among other items, "alterations and repairs

* * * made in reliance upon the performance by the defendant * * * which have never been utilized." If he can prove this, he may well be entitled to substantial damages. This is enough to require reversal for a new trial and we shall not now decide whether or not he may also recover the cost of making the unsuccessful pictures, which is the chief element of the damages sued for, upon the theory that it was a reasonable expenditure in attempted mitigation.

Judgment reversed.