45753. GENERAL FORMS, INC. v.
CONTINENTAL CASUALTY COMPANY.

ARGUED NOVEMBER 3, 1970—DECIDED DECEMBER 2, 1970.

*Bouhan, Williams & Levy, Walter C. Hartridge,* for appellant.

*Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, E. Ormonde Hunter,* for appellee.

DEEN, Judge. ■ What is meant by the terms "total rental cost" and "forms are to remain on job site for duration of work?" The original contract for building the hospital specified a completion date of April 14, 1969, and the forms were returned before that time. The president of the plaintiff corporation by affidavit stated that everyone in the construction business knows that multi-story buildings are built in phases, that when the concrete-pouring phase is completed, the entire contract is about 30% finished; "that among unprejudiced construction engineers and general contractors there is only one interpretation of the receipt ['forms are to remain on job site for duration of work'] and that meaning is that rental is paid for forms in accord to subcontract and amendment thereto specifying schedule of beginnings and completions of each deck with roof of penthouse poured by December 8, 1967. The trade would consider it ridiculous to interpret the receipt to

mean that the forms are to remain until the full "completion of the St. Joseph Hospital project, as there could be no further use of said forms after completion of pouring of the decks which is reached in the first 30% of the entire construction project. These forms were rented on a calculated use of five months by the general contractor and the plaintiff subcontractor."

The general manager of Mike Bradford & Co., Inc., who had handled these negotiations deposed by affidavit: "That it was never the understanding of the general contractor in this specific subcontract for complete form rental nor is it customary in the construction trade that unusual retention or use of rented concrete forms after the scheduled date of pouring of the concrete structure should be without remuneration. Rentals for use of concrete forms are negotiated on a basis of an estimated time of use of the forms and in this contract for approximately six months. Unusual retention of the concrete forms "after the structural completion date of December 8, 1967, or use on additional work would have resulted in negotiations for additional compensation to the original agreement."

It is obvious from the above that the defendant's position in this case is that plaintiff agreed to allow the forms to remain on site "for duration of work" meaning the completion of the hospital, and it is plaintiff's position that both parties to the rental agreement contracted with reference to the customary understanding of the trade that the work of pouring is completed during approximately the first 30% of working time of the completed project. "The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." *Code* § 20-704 (3). While a trade custom cannot be used to contradict an express contract term (*Shippen v. Folsom,* 200 Ga. 58 (35 SE2d 915)) where it runs counter to an express provision of the agreement (*Mays v. Hankinson & Hagler,* 31 Ga. App. 473 (120 SE 793)), nevertheless, where there is a possibility of understanding a term in more than one sense, parol evidence is admissible to show that the parties contracted with the intention that the custom of the trade as to duration should apply to their contract. *Wells v. First Nat. Exhibitors Circuit,* 149 Ga. 200 (99 SE 615); *Wood v.*

*Frank Graham Co.,* 91 Ga. App. 621 (86 SE2d 691); *Taber Mill v. Southern Brighton Mills,* 49 Ga. App. 390 (175 SE 665). The general rule is that valid usages concerning the subject matter of the contract of which the parties are chargeable with knowledge are by implication incorporated therein, if the contract is subject to the interpretation urged and if nothing within it excludes such interpretation as having been within the intention of the parties. *Regents of Univ. System of Ga. v. Blanton,* 49 Ga. App. 602 (176 SE 673). Here the agents for both contracting parties swear that they contracted with this intention and understanding, and that any other interpretation would be contrary to the understanding of the trade. Were it not for these affidavits we would agree with the trial court that the forms were leased "for the duration of the job" meaning the time set for overall construction in the original contract. But where both signatories to the contract swear that their intention was otherwise and that it corresponded with the general usage of the trade, and where nothing in the purchase order or receipt absolutely rules out such interpretation, the question of whether such custom exists and whether it became by implication a part of the lease contract becomes a question of fact for jury decision.

■ Plaintiff sought to amend its petition to recover additionally for certain clamps taken over by the defendant and by it delivered to Norair, Inc., which under contract with the owner assumed the obligations of finishing the contract. The date of filing is not shown, but a copy appears to have been mailed to defendant's attorney on the same date on which the court's order was signed. It cannot be determined whether or not this claim is included in the court's order. Appellee contends that at the time the order was signed, the judge had no notice of the amendment which may or may not have been filed at the time. Since the case is being reversed on other grounds, and since it affirmatively appears from this record that the defendant had not been served with the claim at the time the order was taken, it is proper to leave this question open for future adjudication.

*Judgment reversed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*