## WARNER BROS. PICTURES, Inc., et al. v. COMMERCE REALTY CO. *
### (No. 1176—5164.)

Commission of Appeals of Texas, Section A. Jan. 2, 1929.

Boyle, Wheeler & Gresham, Strickland & Ridgeway, and Nelson Lytle, all of San Antonio, for plaintiffs in error.

Birkhead, Lang & Beckmann and Harold K. Stanard, all of San Antonio, for defendant in error.

CRITZ, J. This suit was originally instituted in the district court of Bexar county, Tex., by Commerce Realty Company, a corporation, defendant in error in this court, against Warner Bros. Pictures, Incorporated, and several other alleged allied corporations, plaintiffs in error in this court, for injunction.

For convenience, parties will hereafter be referred to according to their positions in the trial court; the Commerce Realty Company as plaintiff, and Warner Bros. Pictures, Incorporated, et al., as defendants.

The relief sought and the proceedings had in the trial court are set out in the opinion of the Court of Civil Appeals as follows:

"Plaintiff prayed for a temporary injunction, among other things, commanding Warner Bros. Pictures, Incorporated, and Vitagraph, Incorporated, and their officers, agents, and employees, and representatives to desist and refrain from offering to sell, lend, or lease, and commanding them not to sell, loan, or lease, the said super special picture 'The Jazz Singer,' together with any mechanical appliances in connection therewith to any other person, firm, or corporation in San Antonio for use in any other theater in San Antonio without first offering the same for sale to plaintiff at a reasonable price. Plaintiff further prayed for a permanent injunction to the same effect against all of said defendants upon final hearing of the suit upon its merits.

"Upon the filing of plaintiff's original petition a temporary restraining order against all of the defendants was made by the court on the 25th day of February, 1928, prohibiting them from doing any of the acts complained of in plaintiff's petition, and setting the case for hearing on application for temporary injunction. Writs were duly served on all the defendants, and each of the defendants duly filed answer to plaintiff's petition.

"Hearing on the application for temporary injunction was adjourned from March 3d to the following Monday, March 5th, and evidence was heard by the court from March 5th to 9th inclusive. At the conclusion of the evidence and after arguments of counsel, the court announced that it would take the matter under advisement and announce its decision at a later date, and thereafter, on April 4, 1928, the court rendered its order refusing and denying plaintiff's application for temporary injunction, pending final trial of the suit on its merits. In such order the court continued in effect the temporary restraining order theretofore made by the court on February 25, 1928, until and including May 19, 1928, in order to preserve the statu quo while giving the honorable Court of Civil Appeals an opportunity to pass on the appeal from the court's action in refusing the temporary injunction sought by plaintiff during the pendency of the suit."

Plaintiff duly appealed to the Court of

*Opinion modified and rehearing denied 13 S.W.(2d) 337.

Civil Appeals for the Fourth District at San Antonio, which court reversed the judgment of the district court, and entered judgment directing the trial court to enter the temporary restraining order prayed for by the plaintiff. 8 S.W.(2d) 189. The case is now before this court on writ of error granted on application of defendants.

The pleadings of the plaintiff are very voluminous, but that part of same which we consider germane to a decision of this appeal is as follows:

"That on or about May 11, 1926, the defendants Warner Bros. Pictures, Incorporated, and Vitagraph, Incorporated, acting by and through one C. C. Ezell, their authorized agent, made and entered into a contract with plaintiff, whereunder the said two defendants, for a valuable consideration, agreed that plaintiff should have submitted to it, before and in advance of submission to other theatres in the city of San Antonio, a proposition or 'offer' of the right to use and exhibit any and all super special pictures produced by the defendant Warner Bros. Pictures, Incorporated, in plaintiff's Aztec Theatre in San Antonio, prior to their exhibition elsewhere in San Antonio and that upon such submission plaintiff should have the right to use any and/or all of said super special pictures accepted or selected by plaintiff upon paying defendants for such picture or pictures a reasonable price or prices.

"That the valuable consideration mentioned in the preceding paragraph was the agreement upon the part of plaintiff to purchase from the defendants a series of motion picture films known as the 'Warner Winners' and to pay therefor the sum of $21,000.

"That in connection with said contract of May 11, 1926, the defendant Warner Bros. Pictures, Incorporated, made, executed and delivered to plaintiff the following memorandum, to wit:

" 'Dallas, Texas, May 11, 1926.

" 'Mr. Sam E. Morris, General Manager, Vitagraph, Inc. 1600 Broadway, New York, N. Y.

" 'Dear Mr. Morris: Mr. Wm. Epstein, who is just completing the Aztec Theatre, San Antonio, Texas, and which he advises is the most beautiful house in America, called on us today in an effort to secure a contract covering all super specials such as Barrymore, Chaplin, etc.

" 'We explained to Mr. Epstein that all of these productions would be given a $2 showing and no contracts or agreements could be entered into until the value of the picture had been established. We would, however, in every case submit our proposition covering each picture to him before selling elsewhere. In other words, if we could agree on price, terms, etc., a contract would be given.

" 'Yours very truly,      C. C. Ezell.' "

The facts conclusively show that on May 11, 1926, Epstein, agent of plaintiff, met Ezell, agent of Warner Bros., and had an extended conversation with him in regard to purchasing pictures to be shown by plaintiff in the Aztec Theater in San Antonio, and it is during this conversation that plaintiff contends in his oral and written argument that the defendants' said agent made an oral contract to give plaintiff a first option to buy all the Warner Bros. "Super Specials" for as long as Warner Bros. should make them, at a reasonable price. It is further conclusively shown that during this conversation Ezell wrote the letter set out above, and at the request of Epstein gave him a signed copy thereof. Epstein accepted the letter, with full knowledge of its contents, and made no objection thereto, under circumstances which we think as a matter of law constitute the letter a written memorandum of their contract.

The plaintiff contends both by written and oral argument that its suit is based on an oral contract made at the time the written memorandum was executed and delivered to it, and it further contends in its written argument that its only purpose in pleading and proving the execution and delivery of the letter to the plaintiff's said agent was, first, to corroborate the testimony of Epstein, and, second, in order that the letter might serve as sufficient memorandum to justify and authorize the admission of proof of the oral contract in case the trial court should hold that the oral contract came within the statute of frauds; though at the same time the plaintiff contends that the oral contract did not come within the statute of frauds. The written memorandum certainly does not corroborate Epstein on the vital issue of the case as presented by this appeal, but, on the other hand, directly contradicts the part of his testimony in which he says that he was to have the first option to purchase at a reasonable price. It will here be remarked that Epstein testifies both ways in regard to this matter.

In our opinion, the above letter, or memorandum, considering its contents, and the facts and circumstances surrounding its execution and delivery to the plaintiff's said agent, and plaintiff's pleading, is in law, so far as the issues of this litigation are concerned, the written memorandum of the option contract between the parties thereto, and we find no evidence in the record that it has since been changed or altered.

█ It is the contention of the plaintiff that it is entitled to purchase all "Super Special" pictures produced by Warner Bros. upon paying for such pictures a reasonable price, and the relief sought in this litigation is predicated on the right to purchase at such price. In our opinion, the written memorandum is not susceptible of such a construction, as it plainly provides that in every case the proposition of Warner Bros. covering each picture shall be submitted to the plaintiff before selling elsewhere, and if price, terms, etc., can be agreed on, a contract will be made. By no stretch of the rules of construction can the

written memorandum be construed to mean anything other than that Warner Bros. have agreed to give plaintiff the first option to purchase the "Super Special" pictures at the price and on the terms, etc., to be demanded of them by Warner Bros. In other words, the contract does not bind Warner Bros. to sell the pictures at a reasonable price at all, but expressly gives them the right to fix the price, and to impose the terms, etc., upon which the plaintiff would have to take the pictures. Should the plaintiff fail to pay the price, or to comply with the terms, etc., fixed by Warner Bros., then, under the contract, there would be no bar which would prevent Warner Bros. from selling the pictures elsewhere.

[2] The relief sought by the plaintiff is predicated upon the theory that it has the option to purchase and show the pictures in question at a reasonable price. The contract not being susceptible of such construction, the trial court was correct in refusing the temporary injunction.

It is contended by defendants that the written memorandum above set out is too general and uncertain to be enforceable as a contract. Under the view we take of the case, it is not necessary to pass on this issue, and we expressly decline to do so. What we hold is that the trial court was correct in dissolving the temporary injunction for the reasons stated by us, even if the contract be treated as sufficiently certain to be binding in law.

It follows that we recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed. We further recommend that the temporary injunction now in force be in all things dissolved.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, with dissolution of temporary injunction, as recommended by the Commission of Appeals.